72 S.E.2d 589 (1952)
236 N.C. 259
JACKSON
v.
JOYNER.
No. 93.
Supreme Court of North Carolina.
October 8, 1952.
*591 W. W. Candler, Don C. Young, and Cecil C. Jackson, Asheville, for plaintiff, appellant.
Harkins, Van Winkle, Walton & Buck, Asheville, for defendant, appellee.
JOHNSON, Justice.
The plaintiff challenges the correctness of these instructions: "* * * The Court instructs you that there is no evidence tending to show that Edgar A. Hanson or any of the nurses who attended Judith Lane Jackson was an employee of the defendant, Dr. T. H. Joyner. The Court instructs you further that the negligence on the part of Hanson, if any, and the negligence on the part of any of the nurses, if any, would not be deemed in law, the negligence of the defendant, Dr. Joyner.
"If there were negligence on the part of Hanson or on the part of any one or more of the nurses, which is denied by the defendant, Dr. T. H. Joyner, in such case the defendant, Dr. T. H. Joyner, would not be responsible for their negligence. The issue for decision is whether the defendant, Dr. T. H. Joyner, was negligent and whether such negligence on his part was the proximate cause or one of the proximate causes of the death of Judith Lane Jackson."
These instructions in effect withdrew from the jury the question of negligence of Dr. Joyner based on the conduct of nurse Hanson.
The record discloses that the child's mother in arranging for the operation contacted and engaged only Dr. Joyner. He in turn, after demurring to the mother's suggestion that her family physician be engaged to give the anaesthetic, arranged for the help and assistance of the nurses, including nurse Hanson, who administered the anaesthetic.
On this record the evidence is sufficient to justify the inference that during the time the child was being prepared for the operation and while the operation was in progress, Dr. Joyner, as surgeon in charge, had full power of control over the nurses, including nurse Hanson, so as to make him responsible for the way and manner in which the anaesthetic was administered by Hanson.
And when a surgeon occupies such position, his duties and liabilities respecting supervision and control over the administration of the anaesthetic are substantially the same as those respecting the other phases of the operation and his treatment of the patient generally; that is, he is bound to exercise such reasonable care and skill respecting the administration of the anaesthetic as is usually exercised by average physicians and surgeons of good standing in the same community. 41 Am. Jur., Physicians and Surgeons, Sec. 95. See also Jackson v. Mountain Sanitarium & Asheville Agriculture School, 234 N.C. 222, 67 S.E.2d 57; Nash v. Royster, 189 N.C. 408, 127 S.E. 356.
It is true Hanson was in the general employ of the hospital; nevertheless, on this record it is inferable that he stood in the position of a lent servant who for the purpose and duration of the operation occupied the position of servant of Dr. Joyner. 35 Am.Jur., Master and Servant, Sec. 18. And the rule is that where a servant has two masters, a general and special one, the latter, if having the power of immediate direction and control, is the one responsible for the servant's negligence. 35 Am.Jur., Master and Servant, Sec. 541. See also Hodge v. McGuire, 235 N.C. 132, 69 S.E.2d 227, 229; Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 15, 29 S.E.2d 137. The power of control is the test of liability under the doctrine of respondeat superior. 35 Am.Jur., Master and Servant, Sec. 539.
It would seem from what we have said that the challenged instructions must be held for error in eliminating from the case the doctrine of respondeat superior.
*592 The defendant seeks to sustain the instructions as given on the theory that the nonsuit as to Hanson, affirmed on former appeal on authority of Byrd v. Marion General Hospital, 202 N.C. 337, 162 S.E. 738, relieves Dr. Joyner from liability for any act or omission connected with the conduct of nurse Hanson in administering the anaesthetic, and such is urged to be the law of the case.
The contention would seem to be without merit, but it calls for an analysis of the decision in Byrd v. Marion General Hospital, supra. There, the action was against the lessee of a hospital and a staff nurse. The attending physician was not sued. The evidence disclosed that the alleged acts of negligence of the nurse were committed in administering a heat treatment to a patient while the physician in charge was standing by directing the mode of treatment and impliedly approving the treatment as given by the nurse. The treatment was not obviously or inherently dangerous. It was there held that the nurse was justified in assuming that the treatment, administered in the presence of the physician, was proper under the circumstances, and it was further held that the treatment so administered was deemed the treatment of the physician and not of the nurse, and that nonsuit should have been allowed.
In short, Byrd v. Marion General Hospital, supra, holds that as between patient and nurse, the nurse who follows the orders of the physician or surgeon in charge is not ordinarily liable if injury results from the treatment as prescribed. But nothing is said in the Byrd case to justify the contention that exoneration of the nurse, ipso facto, immunizes the physician in charge.
On the contrary, the rationale of the decision in the Byrd case is, not that nonsuit as to the nurse immunizes the physician, but rather, if the acts and omissions complained of be negligent, they then are referable and imputable to the true author thereof, the physician who directed or suffered the negligent conduct through the instrumentality of an agent under his control, and that therefore the physician alone is responsible and liable therefor.
Further, it is to be observed that the principle announced in the Byrd case stands as an exception to the general rule that an agent who does a tortuous act is not relieved from liability by the fact that he acted at the command or under the direction of his principal. 2 Am.Jur., Agency, Sections 324 and 326.
But be that as it may, the decision on former appeal, based on the Byrd decision, may not be invoked for the purpose of limiting the liability, if any, of Dr. Joyner or restricting the scope of the issue of negligence as to him. The principle upon which the decision in the Byrd case was made to turn has no bearing on the issue of negligence as to Dr. Joyner and furnishes no criterion by which to determine the question of his liability. It follows, then, that the evidence which was adduced below, including that which was substantially the same as on first trial and also the new evidence offered on retrial, should have been evaluated in the light of the general rules governing the doctrine of respondeat superior.
We have also considered the defendant's further contention that if there be errors in the instructions they were harmless. Here the defendant urges that there is neither allegation nor proof to support any finding of negligence against Dr. Joyner based on negligent acts or omissions of Hanson. The record impels the other view. The gravamen of the complaint is that this was an anaesthetic death. There is specific allegation that Dr. Joyner permitted an overdose of ether or anaesthesia to be administered by Hanson. The evidence offered at the first trial, which we held to be sufficient to make out a prima facie case of actionable negligence, was substantially re-offered at the second hearing. See statement of facts in connection with the decision on former appeal234 N.C. 222, 67 S.E.2d 57. Also, on retrial, substantial new evidence was offered tending to show actionable negligence of the defendant based on the conduct of nurse Hanson. However, with *593 the case going back for retrial, we refrain from recapitulating or discussing this evidence in detail. It suffices to say a considerable portion of such evidence was elicited from defense witnesses.
Since errors in the charge necessitate a new trial, we deem it proper to direct attention to another group of exceptions which seem to be worthy of consideration. These relate to the testimony of a number of medical experts placed on the stand by the defendant. The exceptions challenge both the form of hypothetical questions propounded to the witnesses and the answers given by them. The question propounded to Dr. Louis Griffith will suffice to illustrate this group of exceptions:
"Q. If the jury should find from the evidence in this case and by its greater weight that Dr. Joyner performed a tonsillectomy operation on Judith Jackson, * * * (then follows a three-page gist of the defendant's evidence, relating numerous visits of Dr. Joyner to the bedside of the child beginning about fifteen minutes after she was taken to the hospital room following the operation and runing through the rest of the day and night until she died, and giving the details of the treatment and care of the child by Dr. Joyner and the nurses during this period) * * * have you an opinion satisfactory to yourself as to whether or not the actions of Dr. Joyner in his treatment and care of this patient after post-operation and the conditions under which she was was kept and observed during that time would constitute a reasonable degree of care to be exercised by a diligent physician on a patient following a tonsillectomy?
"Objection by plaintiff. Overruled. Exception.
"A. Yes, I have an opinion.
"Q. What is that opinion, Doctor? A. My opinion is that the child had meticulous care.
"Motion by plaintiff's counsel to strike out the answer and instruct the jury not to consider the answer. Motion denied. Exception.
"Q. Doctor, will you please define to the jury what you mean by `meticulous' care? A. Well, in my estimation * * *
"Q. In your opinion, doctor? A. Yes, in my opinion. That was just a mistake on my part, my opinionin my opinion no patient could have had better care than that patient had.
"Motion to strike. Denied. Exception.
"Q. That is assuming the facts to be as recited in the question?
"Objection.
"A. Yes, that is it exactly.
"Motion to strike. Denied. Exception."
Instead of asking the witness whether in his opinion the treatment outlined in the hypothetical question constitutes "a reasonable degree of care to be exercised by a diligent physician," it would seem to be the better practice, more nearly in accord with approved precedents, to let the witness say whether in his opinion the treatment and care given, as outlined in the hypothetical question, was in conformity with approved medical practices and treatment in the same locality, thus leaving it for the jury to draw from the evidence its own inference as to whether the physician exercised reasonable care in applying his professional knowledge and skill to the patient's case. See Stansbury, North Carolina Law of Evidence, Sec. 137; 32 C.J.S., Evidence, § 534(4); 20 Am.Jur., Evidence, Sec. 787 et seq.; 58 Am.Jur., Witnesses, Sec. 851 et seq., cf. Wigmore on Evidence, Third Ed., Vol. 11, Sections 672 to 686.
It is also noted that this witness' answer, in addition to being unresponsive to the question, was highly argumentative. New trial.