ROY L. JONES, ADMINISTRATOR OF THE ESTATE OF MARVIN COMER JONES, DECEASED v. DOUGLAS AIRCRAFT COMPANY, INC.

(Filed 29 January, 1960.)

**1. Master and Servant § 1—**

Where a contractor rents a crane together with the crane operator to perform part of the work, the crane operator, for the period so employed, is ordinarily an employee of the contractor.

**2. Master and Servant § 18— Evidence of negligence of main contractor resulting in injury to employee of construction contractor held sufficient to be submitted to the jury.**

Evidence tending to show that a manufacturer under contract with the Federal Government was given possession and control of a Federal plant for the purpose of manufacturing an article for the Government, that to provide the manufacturer with necessary facilities the Government contracted with a construction company for the erection of a building, that in the performance of the work it was necessary to operate a large crane under high tension wires, that the contractor requested the manufacturer to have the current turned off on a particular day when the crane was to be operated, that the manufacturer assured the contractor this would be done, and that on the day appointed the crane operator was electrocuted when the crane came in contact with the high tension wires, the current not having been turned off as promised, *is held* sufficient to be submitted to the jury in an action against the manufacturer for the wrongful death of the crane operator.

**3. Same—**

A crane operator will not be held guilty of contributory negligence as a matter of law in operating a crane under high tension wires when he had been given to understand that the current would be turned off during the progress of the work, nor will he be held contributorily negligent if, after learning that the current had not been cut off, he went to the crane while its top was moving toward the wires in the reasonable belief that he could stop the movement of the crane before there was contact with the wires.

**4. Evidence § 29—**

Evidence that upon learning of the fatal injury of a workman the person whom plaintiff claimed was under duty to have given an order which would have obviated the danger causing the injury, was taken to a hospital, is incompetent as an implied admission of negligence in the absence of any evidence as to the reason for the hospitalization.

**5. Evidence § 31—**

An admission by an agent in regard to a past occurrence not forming part of the *res gestae* is incompetent against the principal.

**6. Master and Servant § 18—**

The liability of the principal contractor in control of the premises for the electrocution of an employee of a contractor in construction of a building on the premises is based upon the duty not to render the place

where the employee was working unsafe by continuing to transmit current over the wires after request that the current be turned off during the progress of the work, and an instruction predicating the liability of the principal contractor upon the duty of a power company in the distribution of electricity *is held* for prejudicial error.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by Douglas Aircraft Company, Inc. from *Froneberger, J.,* March 9, 1959 Regular Term, of Schedule "B" of MECKLENBURG.

This is an action to recover damages on account of the death on 9 April 1957, of plaintiff's intestate (hereafter referred to as Jones) resulting from the asserted negligence of appellant (hereafter referred to as Douglas).

The United States owned a parcel of land in Charlotte known as Charlotte Ordinance Missile Plant. It contracted with Douglas for the construction of Nike missiles. To facilitate production it gave Douglas possession and control of the Missile Plant. The plant was in need of "reactivation and rehabilitation." To fill that need the United States entered into a contract with Boyd & Goforth to make additions to plant buildings. At the time of Jones' death, Boyd & Goforth were performing their contract with the United States, working on what was known as "Building 3." A part of their work was pouring a concrete mixture on steel rods to provide a reinforced section of the addition to the building then under construction. To pour the concrete, Boyd & Goforth rented from Charlotte Equipment Company a mobile crane and its operator, Jones.

Included as a part of the Missile Plant which the United States furnished Douglas was an electric distribution system. The wires of this system, carrying 13,200 volts, passed 40 feet overhead in proximity to the place where Boyd & Goforth were at work. The crane operated by Jones came in contact with these high voltage wires. As a result, Jones was electrocuted.

Plaintiff bases his right to recover on the asserted negligent failure of Douglas to switch the current off of the high potential lines in proximity to the construction work while that work was in progress. He alleges Douglas had knowledge of the work, the manner in which it was being performed, the danger of contact between the crane and the wires, and the promise and assurance on the part of Douglas that the current would be cut off for the pouring of the concrete.

Douglas denied the alleged negligence and as an additional defense pleaded contributory negligence on the part of Jones, an experienced operator, in operating his crane in proximity to these high potential wires and in permitting the crane to come in contact with the wires.

Issues of negligence, contributory negligence, and damages were submitted to and answered by the jury in conformity with plaintiff's contentions. Judgment was entered based on the verdict, and Douglas, having excepted, appealed.

*Carswell & Justice, Robinson, Jones & Hewson, Kennedy, Covington, Lobdell & Hickman for plaintiff, appellee.*
*Carpenter & Webb for defendant, appellant.*

RODMAN, J. The assignment of error which requires first consideration is the motion to nonsuit. Appellant argues the motion should have been sustained on either of two theories: (1) the failure of plaintiff to establish the asserted negligence of defendant, and (2) clear and uncontradicted evidence of negligence of Jones proximately causing his death.

Without reciting the evidence, it is, we think, sufficient to permit but not compel a jury to find these facts: Jones, when he left Charlotte Equipment Company with the crane to work for Boyd & Goforth, became, for the period so employed, the servant of Boyd & Goforth. *Jackson v. Joyner,* 236 N.C. 259, 72 S.E. 2d 589. Boyd & Goforth and its employees were rightly on the premises engaged in the construction of a building which Douglas had requested the Government to erect for its, Douglas' convenience. The work which Jones was employed to do was dangerous and the place assigned to do the work unsafe so long as the overhead wires were energized. That fact was known to and recognized by Boyd & Goforth and by Douglas. On 8 April Jones, acting under orders of Byrd, manager of Charlotte Equipment Company, took the identical crane which he used on the 9th when he was electrocuted to the plant to work for Boyd & Goforth. He was permitted by the guard at the gate to enter and proceeded to a place in proximity to the point where the work was to be performed but he was not permitted by Chaney, superintendent for Boyd & Goforth, to go to the scene of work until the electric lines had been de-energized. This resulted in a substantial delay. Jones and the crane which he operated were then used in placing the steel which would reinforce the concrete to be poured the following day. To avoid a similar delay when the concrete was to be poured, Chaney, on the afternoon of the 8th, in accord with designated procedure, called Wilson, of the Corps of Engineers, and requested Wilson to have the lines de-energized by 7:30 on the morning of the 9th. Thereupon Wilson called Bolick, an assistant foreman for Douglas, whose duty it was to throw the necessary switches cutting current from the lines adjacent to the point

where Jones would work. Bolick informed Wilson he would have to obtain permission from his superiors before giving assurances that the current would be off at 7:30 on the following morning. Subsequently Bolick called Wilson, informing him that the necessary authorization had been obtained and the current would be off at 7:30 on the morning of the 9th. Wilson thereupon so informed Chaney. The promise made by Bolick for Douglas to de-energize by 7:30 a.m. on the 9th was communicated to Jones. Wilson testified he had the switch keys before Douglas took possession. He delivered these keys to Douglas and was then directed to contact either Quinn or Bolick whenever it was necessary to de-energize a line. Pursuant to this direction given by Douglas, he communicated with Bolick on the 8th. On the 9th, Byrd, in response to a telephone call from Chaney, sent Jones to pour the concrete. Jones passed through the plant gate at 7:30. He was electrocuted at 8:00 a.m. or shortly thereafter. The line had not been de-energized as Bolick had promised and as Wilson had informed Chaney and as Chaney had informed Byrd.

The crane was mounted on wheels. In placing it in position for work, the driver ran over a piece of 2 x 4 which damaged the hose connecting the radiator and engine. The boom and bucket were elevated. They were held in a horizontal position by means of a brake. This brake was not sufficient to prevent a horizontal movement caused by the slope of the land, the wind, and the vibration of the engine. The boom and bucket began to swing towards the power line while Jones was under the machine attempting to repair the hose to the radiator. In response to a call from a bystander, he came from under the machine, ran a few steps away from it, and then turned and went back to it, apparently in an attempt to check its movement and prevent contact with the wires. When he touched the machine he was electrocuted.

Since the jury might find these facts, we must determine the motion to nonsuit upon the assumption that they have been established.

The relationship of master and servant existing between Boyd & Goforth and Jones imposed on the former the duty of exercising reasonable care to provide a reasonably safe place for its employee to work. *Bemont v. Isenhour*, 249 N.C. 106, 105 S.E. 2d 431; *Baker v. R. R.*, 232 N.C. 523, 61 S.E. 2d 621; *Murray v. R. R.*, 218 N.C. 392, 11 S.E. 2d 326; *Ainsley v. Lumber Co.*, 165 N.C. 122, 81 S.E. 4.

To discharge this obligation the master secured a promise from Douglas that the danger would be removed and the place made safe. The master attempted to perform its duty, but contrary to the assurance given, Douglas continued to send the invisible current along

the power line, leaving the place where the work was to be performed unsafe and hazardous. Douglas' promise was an invitation to Jones to proceed with his work. A failure to de-energize in this situation was a breach of duty imposing liability for injuries proximately resulting therefrom. *Bemont v. Isenhour, supra; Thompson v. DeVonde*, 235 N.C. 520, 70 S.E. 2d 424; *Coston v. Hotel Co.*, 231 N.C. 546, 57 S.E. 2d 793; *Bell v. Florida Power & Light Co.*, 106 So. 2d 224; *Reboni v. Case Brothers*, 78 A 2d 887; *Brown v. American Steel Foundries*, 116 A 546.

The law is, we think, correctly stated in the notes 44 A.L.R. 982: "Where the premises on which the stipulated work is executed remain under the control of the principal employer while the contract is in the course of performance, a servant of the contractor is in a position of an invitee, and as such entitled to recover for any injury which he may sustain by reason of the abnormally dangerous condition of the premises or the plant thereon, if the evidence shows that the principal employer was, and the servant was not, chargeable with knowledge, actual or constructive, of the existence of that condition." *Deaton v. Elon College*, 226 N.C. 433, 38 S.E. 2d 561.

In the absence of information showing a contrary condition, Jones had a right to rely on the assurance given by Douglas to his employer that the current would be off and on the employer's directions to proceed with the work. *Kennedy v. Telegraph Co.*, 201 N.C. 756, 161 S. E. 396; *Overton v. Manufacturing Co.*, 196 N.C. 670, 146 S.E. 706; *Fowler v. Conduit Co.*, 192 N.C. 14, 133 S.E. 188; *Terrell v. Washington*, 158 N.C. 281 73 S.E. 888.

The evidence does not establish as a matter of law negligence on the part of Jones. If Jones went to the crane understanding that the current had been cut off, he anticipated no hazard. If he learned after placing the machine that the current had not been cut off, but reasonably thought that he could stop the crane before there was contact with the wires, his attempt to do so would not be a negligent act.

The court correctly overruled the motion to nonsuit.

The general manager of Douglas was adversely examined by plaintiff. He was asked: "Q. Did you know that Mr. Bolick had to be taken to the hospital shortly after hearing about the accident? A. Yes."

Defendant's witness Quinn testified on cross-examination that he saw Bolick about one-half hour after he learned of Jones' death. He was then asked and replied: "Q. Was he not stricken and taken to the hospital? Soon after Mr. Wilson called him? A. Yes, he was. Q. Did you see the statement that he gave to the hospital as to why he

was stricken? A. I did not see the statement. I know that it was within half an hour after this thing happened or this man was killed before he was stricken.

This testimony was admitted over defendant's objection. Bolick was not a witness. Unless offered for the purpose of establishing liability, this evidence was immaterial and had no place in the case. If offered as an admission by Bolick of a negligent failure to comply with his promise, as plaintiff asserts, relying on S. v. Lawrence, 196 N.C. 562, 146 S.E. 395, it was incompetent. This is so for two reasons: (1) without additional evidence the reason for Bolick's hospitalization is purely speculative; it cannot rise to the dignity of an admission of wrongful conduct but could doubtlessly be used effectively on the thesis of guilty conscience; (2) if an admission, it related to a past occurrence. Admissions made by an agent not a part of the res gestae are not competent against the principal. Lee v. R. R., 237 N.C. 357; 75 S.E. 2d 143; Coley v. Phillips, 224 N.C. 618, 32 S.E. 2d 757; Salmon v. Pearce, 223 N.C. 587, 27 S.E. 2d 647; Batchelor v. R. R., 196 N.C. 84, 144 S.E. 542.

The court charged: "It is the duty of the company under such conditions to keep the wires perfectly insulated and it must exercise the utmost care to maintain them in such condition and at such places; a high degree of foresight is required because of the character and behavior of electricity which it generates and sells. The defendant's knowledge of its service is supposedly superior to that of its customers."

"Now, ladies and gentlemen of the jury, this rule is given as though an electrical company was the one that was distributing the power, and this, the Court thinks, is applicable to the company such as the defendant in this case having charge of the distribution of power, there on the premises on which the plaintiff was killed."

The court, in other portions of its charge, dealt with liability of an electric company for injuries resulting from negligent construction or maintenance of its distibution system. Defendant excepted to the quoted and similar portions of the charge.

Plaintiff does not seek to impose liability for failure to insulate the wires. In fact, it is said in his brief: "It was conceded by all parties that the wires were not insulated and that the defendant was not required to have them insulated." If defendant is liable, it is not because plaintiff's intestate was a customer of a public utility company or there was any duty owing to him as such. Liability is established upon proof that defendant, having assented to the performance of work for its benefit, owed plaintiff's intestate a duty not to render the

place in which he was at work unsafe by continuing to transmit a deadly current over its lines in violation of its promise. The court should have so instructed the jury. The instructions given were improper and presented an erroneous statement of the law as applicable to the facts developed in this case. *Lookabill v. Regan*, 245 N.C. 500, 96 S.E. 2d 421; *Harris v. Construction Co.*, 240 N.C. 556, 82 S.E. 2d 689; *Blanton v. Dairy*, 238 N.C. 382, 77 S.E. 2d 922; *Childress v. Motor Lines*, 235 N.C. 522, 70 S.E. 2d 558; *Maddox v. Brown*, 232 N.C. 542, 61 S.E. 2d 613. The defendant's assignments of error with respect to the charge are well taken.

New trial.

HIGGINS, J., took no part in the consideration or decision of this case.