ROY L. JONES, ADMINISTRATOR OF THE ESTATE OF MARVIN COMER JONES, DECEASED v. DOUGLAS AIRCRAFT COMPANY, INC., ORIGINAL DEFENDANT, AND BOYD & GOFORTH, INC., ADDITIONAL DEFENDANT.

(Filed 14 December, 1960.)

**1. Torts § 6—**

The right of one defendant sued in tort to the joinder of another for the purpose of contribution rests solely on statute and may be enforced only in the manner prescribed by the statute. G.S. 1-240.

**2. Same—**

A defendant seeking the joinder of another for contribution is in effect a plaintiff as to such other, and the demurrer of the additional defendant to the cross-action for contribution must be determined on the basis of whether the facts alleged in the cross-action are sufficient to show that such other was a joint *tort-feasor* whom the plaintiff could have joined as a defendant if plaintiff had so desired, and in determining this question neither the allegations of the complaint nor the evidence adduced by the plaintiff against the original defendant in a former trial may be considered.

JONES *v.* AIRCRAFT CO.

**3. Same—**

It is not required that the defenses set up in an answer be consistent, and a defendant sued in tort may deny negligence, set up the defense of contributory negligence, and allege in the alternative that, if he were negligent, a party sought to be joined for contribution was also negligent and that such negligence concurred in proximately causing the injury or death.

**4. Same—**

While the original defendant may not set up in his cross-action for contribution that the injury was caused by an instrumentality entirely different from that asserted in the complaint, when the cross-action relates to the cause alleged in the complaint and is predicated upon the same basic factual situation, demurrer on the ground that the cross-action does not stem from the cause of action alleged in the complaint is untenable.

**5. Same— Allegations in cross-action held insufficient to state cause of action for contribution.**

Intestate, an employee of an equipment company, was furnished as the operator of a crane rented by a company having a contract for certain construction on a military base owned by the Federal Government. Intestate was killed when the boom of the crane, in the course of his employment, came in contact with a high tension wire. Suit for wrongful death was instituted against the company having the sole and exclusive control of the premises and of operations thereon under contract with the Government. This defendant filed a cross-action for contribution against the contractor upon allegations that the foreman of the contractor knew that intestate and the crane were on the premises and knew, or in the exercise of due care should have known, that the overhead transmission line had not been de-energized and failed to warn intestate, and that such information as intestate had in regard to the nature of the work and the place it was to be performed was received from such foreman. *Held:* In the absence of allegation that intestate was an employee of the contractor so as to invoke any legal duty arising from the employer-employee relationship, or allegation that the foreman advised intestate that the line had been de-energized or as to what information or instructions the foreman had given plaintiff's intestate, the cross-action is insufficient to state a cause of action against the contractor for contribution.

**6. Negligence § 37b—**

When a person has knowledge of a dangerous condition, the failure to warn him of what he already knows is without significance.

APPEAL by Douglas Aircraft Company, Inc., from *Sharp, Special Judge,* May 1960 Special Civil Term, of MECKLENBURG.

Plaintiff instituted this action against Douglas Aircraft Company, Inc., (hereafter referred to as Douglas) and S. P. Smith, J. P. Rogan and Robert E. Bolick, employees of Douglas, to recover damages

for the death, on April 9, 1957, of Marvin Comer Jones, plaintiff's intestate, alleging his death was caused by the negligence of said defendants.

The said defendants filed a joint answer.

Prior to the commencement of trial at March 9, 1959, Regular Term, Schedule B, a judgment of voluntary nonsuit was entered as to Bolick; and, at the close of plaintiff's evidence at said trial, judgments of involuntary nonsuit were entered as to Smith and Rogan. (The said individuals are no longer parties to the action.) As to Douglas, there was a verdict and judgment in favor of plaintiff. On appeal by Douglas, a new trial was awarded for error in the charge. *Jones v. Aircraft Co.,* 251 N.C. 832, 112 S.E. 2d 257.

On April 19, 1960, upon motion of Douglas, Boyd & Goforth, Inc., (hereafter referred to as Boyd & Goforth) was made an additional party defendant. Douglas then supplemented its original answer by asserting a cross action against Boyd & Goforth under G.S. 1-240 for contribution. Boyd & Goforth demurred to Douglas' cross complaint on grounds considered in the opinion.

This is an appeal by Douglas from an order sustaining Boyd & Goforth's said demurrer. Plaintiff, whose action is against Douglas but not against Boyd & Goforth, is not a party to this appeal.

*Carpenter & Webb and John G. Golding for original defendant Douglas Aircraft Company, Inc., appellant.*

*Helms, Mulliss, McMillan & Johnston for additional defendant Boyd & Goforth, Inc., appellee.*

BOBBITT, J. The question for decision, whether the cross complaint alleges facts sufficient to entitle Douglas, if adjudged liable to plaintiff, to enforce contribution from Boyd & Goforth under G.S. 1-240 as a joint *tort-feasor,* is to be determined solely on the basis of the pleadings. Evidence offered at the trial in March, 1959, as disclosed by the record on former appeal, is not relevant. Nor may we assume what allegations of the respective parties will be supported by evidence at the next trial.

*Plaintiff's allegations against Douglas* are summarized or quoted in the following (our numbering) paragraphs:

1. On the morning of April 9, 1957, the 70-foot boom of a power operated crane struck an overhead high tension electric power transmission line. When this occurred, plaintiff's intestate, the operator of the crane, then on the ground, came in contact with the electrified crane and was instantly killed.

2. This occurred on premises in Charlotte, North Carolina, owned by the United States of America and known as the Charlotte Ammunition Depot. Under contract or arrangement with the United States of America, Douglas had sole and exclusive control of said premises and of operations thereon.

3. Douglas, with the knowledge, consent and concurrence of the United States of America, contracted with Boyd & Goforth to construct an addition "to the Douglas plant" on said premises. Boyd & Goforth leased or rented the crane from Charlotte Equipment Company for use in pouring concrete. Under their agreement, Charlotte Equipment Company was to furnish and did furnish an operator for said crane, to wit, plaintiff's intestate, an employee of Charlotte Equipment Company.

4. Douglas, and its said employees, were notified that the crane would arrive on the premises on the morning of April 9, 1957, and of the necessity of having the current cut off from the overhead transmission lines, and knew the operator of the crane would be in imminent danger unless the transmission lines were de-energized when the crane (with its 70-foot boom) was in close proximity thereto.

5. Smith, Douglas' General Manager, had "general responsibility for the operation of the premises and of the facilities thereof." Rogan, Douglas' Works Manager, had responsibility "for all things in connection with the construction operations being performed by Boyd & Goforth, Inc." Bolick, Douglas' Foreman, "was charged with the specific duty on the 9th day of April 1957, of seeing that all electricity was cut off of the wires which might be contacted by . . . the crane and the boom thereof operated by" plaintiff's intestate.

6. Douglas, and its said employees, "expressly undertook and agreed to see that said electricity was cut off prior to the arrival of the said crane and boom on the premises at the place where it was to be used," and plaintiff's intestate was so advised. Plaintiff's intestate, "in reliance on the representations by the defendants that the electricity had been cut off from the power lines . . . in close proximity to said building addition, moved his crane into position to pour concrete," "pursuant to his duties to his employer, Charlotte Equipment Company," and for the purpose of carrying out his employer's contract with Boyd & Goforth.

The gist of plaintiff's alleged specifications of negligence is that Douglas, and its said employees, with knowledge of the danger to plaintiff's intestate, negligently failed, after agreeing to do so, to cut off the high voltage current on said transmission lines without warn-

ing plaintiff's intestate that they had failed to fulfill their said obligation.

In said joint answer, Douglas denied all of plaintiff's allegations as to its negligence.

For a first further answer and defense, Douglas pleaded, in bar of plaintiff's right to recover, that negligence on the part of plaintiff's intestate (1) was the sole proximate cause of his death or (2) contributed to his death as a proximate cause thereof. In support of these pleas in bar, Douglas alleged, *inter alia,* that plaintiff's intestate drove the crane from a place of safety near the Boyd & Goforth field construction office to the scene of the accident in violation of express instructions he had received from Boyd & Goforth.

For a second further answer and defense, Douglas alleged that Charlotte Equipment Company was the employer of plaintiff's intestate and furnished him a defective crane; that Charlotte Equipment Company's compensation insurance carrier had paid an award to the dependents of plaintiff's intestate; and that, on account of said negligence of Charlotte Equipment Company, any recovery by plaintiff against Douglas should be reduced to the extent of the amount so paid and to which the compensation insurance carrier would otherwise be entitled as subrogee.

Before setting forth the allegations of Douglas' cross complaint, the following well established rules are noted.

Douglas may enforce contribution from Boyd & Goforth only because of and in the manner prescribed by G.S. 1-240. See *Bell v. Lacy,* 248 N.C. 703, 104 S.E. 2d 833, where many decisions relating to this statute are cited. G.S. 1-240 permits "a defendant, who has been sued in a tort action, to bring into the action for the purpose of enforcing contribution, any joint tort-feasor, against whom the plaintiff could have originally brought suit in the same action." *Winborne, J.* (now *C. J.*), in *Wilson v. Massagee,* 224 N.C. 705, 713, 32 S.E. 2d 335; *Potter v. Frosty Morn Meats, Inc.,* 242 N.C. 67, 70, 86 S.E. 2d 780. As to Boyd & Goforth, Douglas is, in effect, a plaintiff. *Etheridge v. Light Co.,* 249 N.C. 367, 369, 106 S.E. 2d 560, and cases cited.

The rule applicable in testing Douglas' cross complaint is whether it appears *from the facts alleged therein* that Douglas and Boyd & Goforth are joint *tort-feasors* in respect of the death of plaintiff's intestate. *Hobbs v. Goodman,* 240 N.C. 192, 81 S.E. 2d 413; *Hayes v. Wilmington,* 243 N.C. 525, 539, 91 S.E. 2d 673. "A demurrer tests the legal sufficiency of the pleading demurred to, admitting for the

purpose the truth of all matters and things alleged therein." *Canestrino v. Powell,* 231 N.C. 190, 196, 56 S.E. 2d 566.

It may be conceded that the facts alleged by Douglas in its first further answer and defense, *if established at trial,* would bar recovery by plaintiff against Boyd & Goforth as well as against Douglas. However, as stated by *Johnson, J.,* in *Hayes v. Wilmington, supra* (p. 540), "a defendant who elects to plead a joint tort-feasor into his case is not required to surrender other defenses available to him. Nor may an additional party defendant who is brought in as a joint tort-feasor on cross complaint of an original defendant escape the plea against him by borrowing from contradictory allegations made by the cross-complaining defendant by way of defense against the plaintiff . . . It is elemental that a defendant may set up and rely upon contradictory defenses." See *Freeman v. Thompson,* 216 N.C. 484, 5 S.E. 2d 434.

The fact that an original defendant denies negligence and otherwise asserts defenses in bar of the plaintiff's right to recover does not preclude him from alleging, conditionally or in the alternative, that *if he were negligent* a third party was also negligent, and that the negligence of such third party concurred with the negligence of the original defendant in causing the injury or death. *Hayes v. Wilmington, supra* (pp. 533-534), and cases there cited.

"It is elemental that a demurrer may not call to its aid facts not appearing on the face of the challenged pleading." *Hayes v. Wilmington, supra* (p. 538), and cases there cited. Hence, in respect of Boyd & Goforth's demurrer, decision rests solely upon the sufficiency of the facts alleged in the pleading challenged thereby, to wit, Douglas' cross complaint.

One ground of demurrer asserted by Boyd & Goforth is that there is "a misjoinder of parties and causes of action in that the cross action is not related to and does not stem from the alleged cause of action set out in the complaint." In *Hobbs v. Goodman, supra,* the decision cited by Boyd & Goforth in support of this ground of demurrer, the plaintiff alleged she was injured when a store sign projecting over the sidewalk fell upon her. She sued Goodman, the lessee of the premises, alleging Goodman had erected the sign in a negligent manner. Goodman, in cross complaint against the landlord for contribution under G.S. 1-240, alleged that the plaintiff *was not injured by a falling sign* but by a part of the metal cover of an awning the landlord had negligently erected prior to Goodman's occupancy of the premises. Judgment sustaining the landlord's demurrer to the cross complaint was sustained on the ground that the facts

alleged therein *as to what injured the plaintiff* were entirely different from those on which the plaintiff based her cause of action against Goodman. On the same ground, the landlord's demurrer to Goodman's amended cross complaint was sustained. *Hobbs v. Goodman,* 241 N.C. 297, 84 S.E. 2d 904.

As to what caused the death of plaintiff's intestate on April 9, 1957, the allegations of the complaint and of Douglas' cross complaint are in complete accord. Hence, *Hobbs v. Goodman, supra,* does not support Boyd & Goforth's contention in respect of said ground for demurrer.

The principal ground of demurrer presents this question: Does the cross complaint allege facts sufficient to state a cause of action on which the plaintiff, if he sought to do so, could recover from Boyd & Goforth as a *tort-feasor?*

Douglas' allegations against Boyd & Goforth are summarized or quoted in the following (our numbering) paragraphs:

1. On April 9, 1957, at approximately 8:00 a.m., plaintiff's intestate "caused or permitted the 70-foot boom of the crane to come in contact with an overhead transmission line, causing the body of the crane to be electrically charged, and that thereafter the plaintiff's intestate while standing on the ground touched the body of the crane and was electrocuted, and that these events occurred at the site of the work being done by Boyd & Goforth, Inc."

2. Boyd & Goforth, under and pursuant to a contract *with the United States Army* (through the corps of Engineers) "was engaged in the construction of additions to a building on the premises of the Charlotte Ordnance Missile Plant." (Our italics.)

3. On April 9, 1957, "as he had been on previous occasions," plaintiff's intestate was upon the premises of the Charlotte Ordnance Missile Plant "by virtue of a contract or arrangement between Boyd & Goforth, Inc., *and the employer of the plaintiff's intestate, Charlotte Equipment Company,* for the purpose of operating a crane owned by the said Charlotte Equipment Company." (Our italics.)

4. Douglas "had no right to control or to supervise either Boyd & Goforth, Inc., or the plaintiff's intestate, or any aspect of the work which they were doing, and did not, in fact, exercise any such control or supervision or give at any time any information or instructions to the plaintiff's intestate concerning the work on the premises or concerning the presence or absence of power in the electric transmission lines."

5. "Under the several contractual relationships existing, any request for the de-energization of power in any transmission line on

the premises would be made by Boyd & Goforth, Inc., to a representative of the Corps of Engineers of the United States Army, who, in turn, had the responsibility to notify an officer or representative of the Ordnance Service of the United States, who, in turn, would coordinate and forward the request to certain designated senior personnel of Douglas Aircraft Company, Inc., who would arrange for the de-energization if the same could be safely done without endangering other persons or processes; any notification from Douglas Aircraft Company, Inc., as to whether power could be turned off or was turned off at any time would likewise be made back through these same officers and representatives in reverse order so that in no event would any employee of Douglas Aircraft Company, Inc., give any such information to either the plaintiff's intestate or to Boyd & Goforth."

6. No employee of Douglas ever gave "to either the plaintiff's intestate or to Boyd & Goforth," any information as to whether the power on said transmission line had been or would be cut off "in connection with the circumstances giving rise to plaintiff's intestate coming in contact with the electric transmission lines."

7. Plaintiff's intestate "received *such information as he had* as to the nature of the work to be done, the place where it was to be done and the circumstances under which it was to be done (including the presence or absence of power in the overhead transmission lines referred to in the complaint) through and from John Chaney, who was employed by Boyd & Goforth, Inc., as its Superintendent and who in dealing with the plaintiff's intestate was acting within the course and scope of his employment and in the furtherance of the business of Boyd & Goforth, Inc." (Our italics.)

8. From the time plaintiff's intestate entered the premises of the Charlotte Ordnance Missile Plant at 7:30 a.m. until he was electrocuted at 8:00 a.m., "the said John Chaney knew or in the exercise of due care should have known that the plaintiff's intestate and the crane of the Charlotte Equipment Company was *(sic)* upon the premises and . . . knew or in the exercise of due care should have known that the overhead high tension transmission line referred to in the complaint had not been cut off or de-energized."

9. Boyd & Goforth, "through its Superintendant, John Chaney, and its other employees on the premises, failed to warn the plaintiff's intestate of the fact that said overhead transmission line was energized when they knew of such fact and when they further knew or in the exercise of due care should have known of the presence of the crane upon the premises and by reason of the fact that they

failed to take appropriate precautions to prevent movement of the crane by the plaintiff's intestate into the area where it might come in contact with the energized transmission line when they knew that the plaintiff's intestate looked solely to them for instructions and warnings, and when they further knew that they had exclusive knowledge of such information and instructions as they had previously given the plaintiff's intestate concerning his work and the presence or absence of danger from the overhead transmission lines."

On former appeal, *Jones v. Aircraft Co.*, 251 N.C. 832, 834, 112 S.E. 2d 257, the opinion states, incident to a consideration of Douglas' exception to the court's refusal of nonsuit, that there was evidence sufficient to permit but not compel a jury to find, *inter alia,* that "Jones, when he left Charlotte Equipment Company with the crane to work for Boyd & Goforth, became, for the period so employed, the servant of Boyd & Goforth. *Jackson v. Joyner,* 236 N.C. 259, 72 S.E. 2d 589."

It is noted: (1) This statement related to evidence adduced at said former trial, not to facts alleged in any pleading; and such evidence is not for consideration on this appeal. (2) Boyd & Goforth was not then a party to the action. (3) The statement did not constitute the basis of decision.

In *Jackson v. Joyner,* cited in the opinion on former appeal, decision was based upon the rule that "where a servant has two masters, a general and special one, the latter, if having the power of immediate direction and control, *is the one responsible for the servant's negligence.*" (Our italics.) The evidence was held sufficient to support a finding that a surgeon was liable for the negligence of a nurse, a general employee of the hospital, while acting under the immediate direction and control of the surgeon during the performance of an operation. As stated by *Johnson, J.:* "The power of control is the test of liability under the doctrine of respondeat superior." In this connection, see *Hodge v. McGuire,* 235 N.C. 132, 69 S.E. 2d 227; 57 C.J.S., Master and Servant § 566; 35 Am. Jur., Master and Servant § 541; Annotation, "Liability under respondeat superior doctrine for acts of operator furnished with leased machine or motor vehicle," 17 A.L.R. 2d 1388; Restatement, Agency § 227.

For present purposes, it is sufficient to say that Douglas does not allege that plaintiff's intestate was an employee of Boyd & Goforth either generally or on the occasion of the fatal injury. Nor does Douglas allege to what extent, if any, Charlotte Equipment Company had surrendered its right to exercise full control of plaintiff's intestate, who, according to Douglas' allegation in its cross

complaint as well as in its answer, was the employee of Charlotte Equipment Company. Hence, under Douglas' allegations, any legal duty owing by Boyd & Goforth to plaintiff's intestate did not arise out of the relationship of employer-employee or master-servant.

Incidentally, it is noted that if an employee and his employer are subject to the Workmen's Compensation Act, this Act provides the employee's exclusive remedy for an accident arising out of and in the course of his employment. G.S. 97-9; G.S. 97-10 (superseded by Ch. 1324, S.L. of 1959). And it is well settled that a third party *tort-feasor*, when sued for the injury or death of such employee, is not entitled to have the employer joined as a joint *tort-feasor* under G.S. 1-240. *Hunsucker v. Chair Co.*, 237 N.C. 559, 75 S.E. 2d 768, and cases cited; *Johnson v. Catlett*, 246 N.C. 341, 98 S.E. 2d 458; *Clark v. Freight Carriers*, 247 N.C. 705, 102 S.E. 2d 252.

In order for plaintiff's intestate, if he sought to do so, to recover damages from Boyd & Goforth as a *tort-feasor*, the facts alleged must be sufficient to establish (1) a legal duty, (2) a breach thereof, and (3) death proximately caused by such breach. *Ramsbottom v. R. R.*, 138 N.C. 38, 41, 50 S.E. 448.

Boyd & Goforth, according to Douglas' allegations, was negligent in that it failed to warn plaintiff's intestate that the overhead transmission lines were energized when Chaney knew of this fact and knew or should have known that plaintiff's intestate was on the premises of the Charlotte Ordnance Missile Plant from 7:30 a.m. until 8:00 a.m.

Douglas alleges that plaintiff's intestate, on the morning of April 9, 1957, "was upon the premises of the Charlotte Ordnance Missile Plant, as he had been on previous occasions." Douglas' allegations do not disclose where the crane was with reference to the location of the overhead transmission lines or what, if anything, plaintiff's intestate was doing, during the period from 7:30 a.m. to 8:00 a.m.

The only reasonable inference to be drawn from Douglas' allegations is that plaintiff's intestate, as well as Douglas and Boyd & Goforth, was fully aware of the danger involved in operating the crane in the vicinity of the overhead transmission lines *if and when said lines were energized*. When a person has knowledge of a dangerous condition, a failure to warn him of what he already knows is without significance. *Petty v. Print Works*, 243 N.C. 292, 304, 90 S.E. 2d 717, and cases cited.

Douglas does not allege that plaintiff's intestate, when he moved the crane into the area of the overhead transmission lines, did not then know the lines were energized. True, plaintiff had so alleged;

but Douglas is no more entitled to rely upon allegations of the complaint in aid of his cross complaint than Boyd & Goforth is entitled to rely thereon in support of its demurrer to the cross complaint. Moreover, there is no allegation that Boyd & Goforth, on the morning of April 9, 1957, gave plaintiff's intestate any information to the effect the lines had been de-energized or directed him to move the crane into the area thereof.

Douglas alleges plaintiff's intestate looked to Chaney, Boyd & Goforth's Superintendent, for instructions as to the presence or absence of power in the overhead transmission lines, and that Boyd & Goforth's employees knew "they had exclusive knowledge of such information and instructions as they had previously given the plaintiff's intestate concerning his work and the presence or absence of danger from the overhead transmission lines." As to what instructions Chaney or any of Boyd & Goforth's employees had given plaintiff's intestate on the morning of April 9, 1957, or prior thereto, Douglas' allegations are silent.

We cannot assume the instructions given by Boyd & Goforth to plaintiff's intestate, whatever they were, were sufficient to impose liability upon Boyd & Goforth any more than we can assume, as Douglas alleged in its first further answer and defense, that plaintiff's intestate drove the crane from a place of safety near the Boyd & Goforth field construction office to the scene of the accident in violation of express instructions he had received from Boyd & Goforth.

Absent allegations as to what information and instructions Boyd & Goforth had given plaintiff's intestate, the conclusion reached is that the facts alleged in the cross complaint are insufficient to show that a breach of a legal duty owing by Boyd & Goforth to plaintiff's intestate proximately caused his death.

Affirmed.