CUSTOM CRAFT FURNITURE, INC., AND PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY v. FRED L. GOODMAN, T/A J. L. GOODMAN & SON.

(Filed 16 December, 1964.)

Negligence §§ 24a, 26—Evidence held insufficient to show negligence on part of defendant's agent in starting fire on ground glazed with lacquer from plaintiff's plant.

The evidence tended to show that defendant's employee, in the discharge of work on plaintiff's machinery, was directed by plaintiff's foreman to cut designated holes in the base plate of the machinery, that the machinery was on defendant's truck which was standing at plaintiff's plant on ground glazed with lacquer from mist from the exhaust ducts of plaintiff's plant, that plaintiff's employees helped defendant's agent move the machinery so that he could get to the base plate with his acetylene torch, and did not warn him of the danger although the torch was burning for some two minutes prior to the fire causing the damage in suit. *Held:* Nonsuit was proper, either on the ground that the evidence fails to show actionable negligence on the part of defendant's agent or affirmatively shows contributory negligence on the part of plaintiff.

APPEAL by plaintiffs from *Huskins, J.*, April Session 1964 of CATAWBA.

This is a civil action to recover damages sustained by plaintiffs which resulted from a fire at the manufacturing plant of Custom Craft Furniture, Inc. (hereinafter called Craft), at Hickory, North Carolina. The fire occurred during the daylight hours on 19 May 1962, resulting in a loss of $91,656.05, which was only partially covered by insurance.

The plant of Craft was equipped with a spray room. There were exhaust fans in the room which forced gasses containing lacquer used in painting furniture out of the spray room through large ducts to the outside of the building. There was an air compressor, used in the spraying operation, in a small room adjoining the main building and about 20 feet from the nearest exhaust duct. Some vibration developed in the base of the compressor.

On 19 May 1962, G. E. Spencer, machine room foreman of Craft, who had held this position for a period of 12 to 14 years, was engaged in detaching the air compressor from the concrete floor to which it was bolted. Spencer, who was in charge of work in the   compressor room,

discovered that he could not remove the bolts from the compressor. He thereupon called the defendant Goodman about cutting the bolts. Goodman maintained a machine shop at Hickory, with trucks carrying acetylene equipment, and "held himself, and his agents, servants and employees out to the public as highly trained specialists in the art of metal working."

Goodman, who was familiar with the furniture plant of Craft, in response to Spencer's request for assistance, asked Spencer if there was any danger in the compressor room, and Spencer replied that there was water on the floor, and, in his opinion, there was no danger in cutting the bolts in the compressor room. Goodman then sent C. R. Craig, one of his employees, with a warning to be careful, to cut the bolts from the compressor base.

Craig arrived at the plant and without incident cut the bolts from the compressor base. Spencer and several other Craft employees "saw fire fly in the area and sparks all around where the flame was cutting the metal." Spencer then requested Craig to weld an angle iron to the base of the compressor. Craig informed him that he could do a better job at defendant's plant. Craig then carried the compressor base to the plant of defendant where the angle iron was welded to the base as requested.

When Craig returned to the furniture factory with the compressor base with the angle iron welded thereto, Spencer then requested Craig to cut four holes in the base of the compressor plate. Craig backed the truck to within three to five feet of the compressor room door, and some of Spencer's helpers moved the compressor base so that it stuck out over the bed of the truck. While Spencer marked the places where he wanted Craig to cut the holes, Craig got the equipment ready and lit the acetylene torch.

Craig's truck was parked about 20 feet from the nearest exhaust fan or vent. The truck was parked on a hard glazed substance which, unknown to Craig, was lacquer mist which had been distributed over the area by the exhaust fans. There was no grass near the rear of the truck. Spencer returned to the compressor room before Craig actually started cutting the holes. Craig testified: "When the flame was adjusted, I applied it to the metal and proceeded to heat it, and when I got the metal hot enough to be molten, reddish glow, I applied excess oxygen to it and intentionally blew it out of the frame onto the ground. When it hit the ground, the substance on the ground caught fire. It was a fast fire. As soon as I noticed it through my cutting glasses, I raised my glasses up and looked down, at which time the

fire was already about two or three feet high * * *." This fire spread into and all over the Craft plant and destroyed it.

While Spencer testified that he knew the area around the compressor room was dangerous because of the lacquer mist, and that no smoking was allowed in the area, no one gave Craig any indication of the danger in the area. The area did not appear to be dangerous to anyone who knew nothing about the presence of the lacquer mist on and in the ground, as indicated by the testimony of Floyd Killian who stated that while he had worked for the factory around eight years he did not know the area was dangerous. According to the evidence, when the fire started, Mr. Spencer said: "There is no use to try to put the fire out, because that is lacquer and it burns just like gasoline."

The evidence further tends to show that craig was operating his acetylene torch for at least two minutes before the fire started; that several of the employees, according to the evidence, knew of the cutting operation but no one notified Craig of the dangerous condition in the area where he was working although they testified they knew that such dangerous condition existed.

At the close of plaintiffs' evidence the defendant moved for judgment as of nonsuit. The motion was allowed. Plaintiffs appeal, assigning error.

*Willis & Sigmon, James C. Smathers for plaintiffs.*
*Patrick, Harper & Dixon, Marshall V. Yount for defendant.*

DENNY, C.J. The appellants contend that Craft's loss was occasioned by the fact that the defendant sent an inexperienced and incompetent welder to its plant to perform the services requested on 19 May 1962. In our opinion, there is no merit to this contention. There is not a scintilla of evidence on this record tending to show that Craig did not remove the four bolts that held the compressor to the concrete floor in the compressor room in exactly the manner Craft's foreman expected the work to be performed. Nor is there any evidence tending to show that the manner and method being used in cutting the holes in the base of the compressor at the time the fire started, was not the usual and proper method for doing such work.

The plaintiff Craft suffered its damages not as the result of the method used in undertaking to do the work, but from the fact that the work was undertaken at a place and in an area that Craft's foreman and at least several of the employees working under him, knew to be an extremely dangerous fire hazard; in fact, so dangerous, that Craft prohibited smoking in the area. Yet, notwithstanding this fact, Craft's foreman and employees, without warning Craig of the fire

hazard, permitted him to proceed to use an acetylene torch to cut the holes in the base of the compressor frame. Furthermore, the employees helped Craig move the compressor base to the rear of the truck so that the portion thereof where the holes were to be cut, extended over the rear end of the truck bed. After the compressor base had been so placed, the foreman marked the places where he wanted the holes cut.

The defendant contends that he should not be held liable for acts done pursuant to the direction of Craft's foreman, which acts were done without the knowledge or consent of the defendant.

In the case of *Snow v. DeButts,* 212 N.C. 120, 193 S.E. 224, this Court said: "A master cannot be held liable for the unauthorized act of a servant on the ground that the servant did the act with the intent to benefit or serve the master. *Daniel v. R. R.,* 136 N.C. 517 (48 S.E. 816); *Marlowe v. Bland,* 154 N.C. 140 (69 S.E. 752)."

General employment of an agent or a servant is not necessarily a sufficient basis of liability to third persons when the damages result from directions or instructions given by someone other than the principal or master. *Shapiro v. Winston-Salem,* 212 N.C. 751, 194 S.E. 479; *Wadford v. Gregory Chandler Co.,* 213 N.C. 802, 196 S.E. 815.

In 57 C.J.S., Master and Servant, § 566, page 292, it is said: "If a hired vehicle is used for a purpose different from that stipulated in the contract, the driver is not the agent of the owner in using it at the direction of the hirer."

In the case of *Jackson v. Joyner,* 236 N.C. 259, 72 S.E. 2d 589, it is said: "* * * (W)here a servant has two masters, a general and special one, the latter, if having the power of immediate direction and control is the one responsible for the servant's negligence. 35 Am. Jur., Master and Servant, Sec. 541."

In our opinion, it is unnecessary to determine whether or not the above position of the defendant is controlling on this appeal. Be that as it may, we have reached the conclusion that when all the evidence adduced in the trial below is considered in the light most favorable to the plaintiffs, it fails to establish actionable negligence on the part of the defendant.

On the other hand, if, for the sake of argument, it should be conceded that the defendant was negligent, the contributory negligence of Craft's agents, servants and employees is so clearly established by the evidence as to prevent recovery on behalf of these plaintiffs.

The judgment of the court below is

Affirmed.