Ramon McKINNEY et ux., Appellants,

v.

R. G. TROMLY, Appellee.

No. 106.

Court of Civil Appeals of Texas.

Tyler.

Dec. 17, 1964.

Rehearing Denied Jan. 14, 1965.

John H. McElhaney and Robert W. Calloway, Turner, Rodgers, Winn, Scurlock & Terry, Eugene L. Smith, of counsel, William L. Richards, Andress, Woodgate, Richards & Condos, Dallas, for appellants.

James A. Williams, Bailey & Williams, Dallas, for appellee.

SELLERS, Justice.

This is a malpractice suit brought by Ramon McKinney and wife against Dr. R. G. Tromly. The suit by the appellants seeks to hold Doctor Tromly liable for the negligence of a nurse, Louise Torian, in administering an anaesthetic to appellants' son Mark upon whom Doctor Tromly was in the act of doing a tonsillectomy with an electrical instrument.

The nurse admitted using ether which is very dangerous when brought in contact with an electrical instrument and will, in better than 90% of the cases, cause an explosion. An explosion did occur when the doctor applied the electrical instrument to Mark's throat, causing the boy's lungs to be so severely burned that he died a few hours after the explosion. The explosion also wrecked the anaesthetic machine and caused a fire, necessitating calling the Fire Department.

The appellants' son, a 9-year-old, was having trouble with his breathing, although he had previously had his tonsils removed. He would breathe through his mouth rather than his nose. The family physician of the McKinneys advised them to take him to Doctor Tromly, which they did, and Doctor Tromly recommended an operation to remove an obstruction in or about the nasal passage. Doctor Tromly advised the McKinneys to carry Mark to Methodist Hospital in Dallas for the operation. Louise Torian, the nurse, was a general employee of the hospital. The administration of an anaesthetic is not an administrative function of the hospital and constitutes the practice of medicine. Although the nurse could not practice medicine, yet she was trained in this field and knew how to administer an anaesthetic. The doctor had used this nurse on prior occasions to give anaesthetics for him. On the morning of the operation Mark was carried into the operating room. The anaesthetic was given by the nurse and other nurses had assembled the electrical instrument and had it ready when the doctor entered.

The machine from which the anaesthetic was administered by the nurse had a large gauge on the front of it which registered in color the different medicines used for anaesthetics and showed at the moment the doctor started his operation that the nurse had used and was using ether. The doctor did not notice this gauge and made no inquiry of the nurse as to what she was giving the boy. He immediately started to operate and the explosion occurred which resulted in the death of Mark. The court admitted evidence of other doctors showing that it was the general practice in Dallas to use a nurse trained in the field to give anaesthetics.

It was an admitted fact that Doctor Tromly had absolute right of control of all personnel in the operating room during the operation, including the nurse whether or not he exercised such control.

The case was submitted to a jury on special issues and resulted in a verdict finding the nurse guilty of negligence, which was the proximate cause of the explosion and injury to Mark. The jury also found that Doctor Tromly was not guilty of negligence. The damages assessed by the jury was $15,000.00. Notwithstanding the jury's verdict, the court entered judgment that plaintiffs take nothing against Doctor Tromly, the only defendant in the suit.

It is the contention of appellants that Doctor Tromly is liable for the negligence of the nurse under the facts in this case, and that the trial court should have entered judgment for the appellants. We have concluded that this contention must be sustained.

We have no difficulty in finding that the nurse, although in the general employ of the hospital, was under the facts of this case an employee of Doctor Tromly while in the operating room and under his control.

The early case of Western Union Telegraph Co. v. Rust, Tex.Civ.App., 120 S.W. 249, err. ref., recognized the rule that one can be in the general employ of one master and the special employee of another at the same time; and if the special master has the right of control, he is liable for the negligence of the servant. While the above case was not a malpractice case, it is interesting to note that it has been cited by the Supreme Court of two other states in malpractice cases in sustaining the view that the surgeon is responsible for the negligence of the nurse. Minogue v. Rutland Hospital, 119 Vt. 336, 125 A.2d 796; Aderhold v. Bishop, 94 Okl. 203, 221 P. 752. In the last cited case the Supreme Court of Oklahoma had this to say:

"We can conceive of no instance in which the application of the doctrine of respondeat superior could exercise a more salutary influence than in cases of damage arising out of surgical operations. The patient is helpless under the influence of an anaesthetic, and absolutely at the mercy of the surgeons performing the operation, and they are

charged with the duty to see that no preventable injury results to their patient. * * * If the operating surgeons were not made liable for the negligent performance of the duties of those working under him, the law in a large measure would fail in affording a means of redress for preventable injuries sustained from surgical operations."

The Supreme Court of North Carolina, in a case much like the one here, in Jackson v. Joyner, 236 N.C. 259, 72 S.E.2d 589, held:

"On this record the evidence is sufficient to justify the inference that during the time the child was being prepared for the operation and while the operation was in progress, Dr. Joyner, as surgeon in charge, had full power of control over the nurses, including nurse Hanson, so as to make him responsible for the way and manner in which the anaesthetic was administered by Hanson.
"* * *

"It is true Hanson was in the general employ of the hospital; nevertheless, on this record it is inferable that he stood in the position of a lent servant who for the purpose and duration of the operation occupied the position of servant of Dr. Joyner. 35 Am.Jur., Master and Servant, Sec. 18. And the rule is that where a servant has two masters, a general and special one, the latter, if having the power of immediate direction and control, is the one responsible for the servant's negligence. 35 Am.Jur., Master and Servant, Sec. 541. See also Hodge v. McGuire, 235 N.C. 132, 69 S.E.2d 227, 229; Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 15, 29 S.E.2d 137. The power of control is the test of liability under the doctrine of *respondeat superior*. 35 Am.Jur., Master and Servant, Sec. 539."

In the case of McConnell v. Williams, 361 Pa. 355, 65 A.2d 243, the Supreme Court of Pennsylvania, in sustaining the recovery against a surgeon for the negligence of a hospital interne, had this to say:

"Physicians and surgeons, like other persons, are subject to the law of agency, and one of them may be, either permanently or temporarily, in the service of another. * * *

"* * *
"* * * And indeed it can readily be understood that in the course of an operation in the operating room of a hospital, and until the surgeon leaves that room at the conclusion of the operation, * * * he is in the same complete charge of those who are present and assisting him as is the captain of a ship over all on board, and that such supreme control is indeed essential in view of the high degree of protection to which an anaesthetized, unconscious patient is entitled,—a protection which Mrs. McConnell could justly claim in this case by reason of her trust and confidence in, and necessary reliance upon, the surgeon she employed to take care of her and her child when born.

"* * * by the interne's becoming subject to his control, he became responsible for the proper performance by the interne of all acts done in subordination to such control, whether defendant actually exercised it or not, and it would make no difference, in view of such control, whether the interne was furnished by the hospital or had been obtained in some other manner. * * *"

The Supreme Court of Texas, in the recent case of Porter v. Puryear, 262 S.W.2d 933, sustained the right of recovery against the doctor whose employee gave the anaesthetic.

■ We do not believe the rule in Dallas of doctors using nurses to give anaesthetics will relieve Doctor Tromly of liability in

this case. Moore v. Ivey, Tex.Civ.App., 264 S.W. 283. From this case we quote:

"Since the jury has found upon sufficient evidence that Dr. Moore left the sponge in Mrs. Ivey, we think that a further finding that such act constituted negligence on the part of Dr. Moore necessarily follows:

"In 21 R.C.L. p. 388, in stating the rule applicable to the matter under discussion here, it is said:

" 'Probably the most common instance of malpractice which is brought into the courts arises out of surgical cases where the physician or attendant has left a sponge in the wound after the incision has been closed. That this is plainly negligence there is no doubt at all; and it matters not that many physicians testify that the best surgeons sometimes leave a sponge, or some other foreign substance, in the bodies of their patients, for this is testimony merely to the effect that almost everybody is at times negligent. * * * Surgeons cannot relieve themselves from liability for injury to a patient caused by leaving a sponge in the wound after an operation by the adoption of a rule requiring an attending nurse to count the sponges used and removed, and relying on such count as conclusive that all sponges have been accounted for.'

"See Akridge v. Noble, 114 Ga. 949, 41 S.E. 78; Gillette v. Tucker, 67 Ohio, 106, 65 N.E. 865, 93 Am.St.Rep. 639; Palmer v. Humiston, 87 Ohio, 401, 101 N.E. 283, 45 L.R.A.,N.S., 640; Hackler v. Ingram (Tex.Civ.App.) 196 S.W. 279."

It was held in Lee v. Moore, Tex.Civ. App., 162 S.W. 437, that a surgeon is responsible for an injury done to a patient through want of proper skill and care in his apprentice or assistant.

Under the foregoing authorities we think it must be held that the trial court judgment be set aside and judgment here entered in favor of appellants, and it is so ordered.

On Motion for Rehearing

We overrule the appellee's contention that this court is without jurisdiction of this case because no notice of appeal was given by the appellants.

 It is our opinion that no notice of appeal is required where motion for new trial is overruled, not by specific ruling of court, but by operation of law, jurisdiction will be conferred on Court of Civil Appeals by filing of bond without notice of appeal. Chekanski v. Texas & New Orleans Railroad Co., 306 S.W.2d 935.

We likewise overrule the contention of the appellee that the judgment of the trial court is excessive.