307 P.2d 1045

Robert L. HEYWOOD, Plaintiff and Respondent,

v.

The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Defendant and Appellant.

No. 8508.

Supreme Court of Utah.

Feb. 27, 1957.

Van Cott, Bagley, Cornwall & McCarthy, Leonard J. Lewis, Clifford L. Ashton, Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant railroad appeals from adverse jury verdict and judgment in action under Federal Employers' Liability Act[1] based on failure to provide a safe place to work.

Plaintiff, Robert L. Heywood, suffered the injuries complained of in a fall from a ladder while he was repairing a steam pipe in the blacksmith shop of defendant's Salt Lake City yards. He had worked in the shops for over 30 years. As a machinist, his current assignment was that of general handy man or "trouble shooter." On the morning of the occurrence steam was seen spouting from the pipe serving a piece of equipment known as a "single arch steam hammer." Due to vibration in the use of this hammer, it is necessary that there be some flexibility in the steam pipe that serves it. This is provided by a bolted joint known as a "stuffing box," which is packed with asbestos packing. This box was the source of the leaking steam. The foreman assigned plaintiff to fix it. It being 12 feet from the floor, he used a ladder to climb to it, closed a shutoff valve on the steampipe about two feet from the box, unbolted the joint, repacked it and bolted it back together. He then turned on the steam and was just about to proceed down the ladder when the joint gave way, the steam pressure thrusting the pipe against his hand with such force that it apparently threw him off balance. The ladder was upset, and he fell to the floor suffering a broken leg.

A later examination of the joint showed an old crack almost around the circumference of the pipe in the flange which formed the joint. The testimony was that such a crack would likely not have been noticed in repacking the joint; but that such a defect would have been discovered by dismantling the stuffing box and examining the pipe; and that such an examination is not made by the "trouble shooter" assigned to the repacking job, but would be made by a pipe fitter. Neither the plaintiff nor the foreman, Schenk, made any request that a pipe fitter be called in on the job in question.

The defendant's attack upon the adverse jury verdict and judgment centers upon its contention that the instructions to the jury were so fashioned as to permit them to return a verdict against the defendant without actually finding it guilty of negligence, but that negligence of the defendant could be assumed if danger existed, regardless of its cause. This contention is based primarily upon Instruction No. 6 as given by the court. The language significant to the controversy here presented is emphasized:

"It is the duty of the defendant railroad company to exercise reasonable care to provide its employees with a reasonably safe place to work. This duty does not require the absolute

1. 45 U.S.C.A. § 51 et seq.

elimination of all danger, but it does require the elimination of all · dangers which the exercise of reasonable care by the defendant railroad company would remove or guard against.

"In this connection *you are instructed that if* you shall find from a preponderance of the evidence that plaintiff at the time of his injury was performing the duties of his employment and that *the defendant failed to exercise reasonable care to make said place reasonably safe for the performance of such duties in that* the position of the plaintiff in connection with his duties and the operation of appliances used in the performance of his duties were such that the *plaintiff was not performing his duties in a place of reasonable safety, then you are instructed that you may find the defendant negligent in such regard;* and if you further find from a preponderance of the evidence that such negligence on the part of the defendant, if any, proximately caused in whole or in part injuries to plaintiff, then you should return a verdict in favor of plaintiff and against the defendant and award to plaintiff damages as in these instructions set forth." (Emphasis added.)

 A fair reading of the above instruction manifests that its meaning is vulnerable to defendant's criticism that it tells the jury that if the place of work was not in fact reasonably safe, the defendant, ipso facto, could be found guilty of failing to use reasonable care. Accessory to this is the refusal of the trial court to give defendant's request No. 6, the material part of which is as follows:

" * * * In order to render the Railroad liable to plaintiff for failure to provide a reasonably safe place to work * * * the plaintiff must prove the following by preponderance of the evidence:

"1. That the Railroad either knew or in the exercise of reasonable care should have known that the said unsafe condition or defective equipment existed, and

"2. That the Railroad knew or in the exercise of reasonable care should have known that the said unsafe condition or defective equipment gave rise to an unreasonable risk of harm to its employees * * *."

The giving of Instruction No. 6, and the refusal to give defendant's request No. 6, submitted the case to the jury without covering the requirement, essential as a precedent to liability, that the defect must have been causd by the defendant, or that the defendant knew, or in the exercise of reasonable care should have known, that a condition existed which would subject the employee to an unreasonable risk of harm, and

had a reasonable opportunity to remedy it. Nor do we find anywhere in the instructions given any clear recognition of the fact that the semihidden defect in this flexible joint (stuffing box) may have resulted from some cause unknown to, and unattributable to the defendant. The Federal Employers' Liability Act does not make the railroad an insurer of its employees' safety; it imposes liability only for injuries caused by negligence, the standard of which is reasonable care, on which subject we took some pains to explain our views in Bowden v. Denver & Rio Grande Western R. Co.[2]

■ We recognize the importance of according litigants who desire it the right of trial by jury; and also the necessary corollary thereto that jury verdicts, once rendered, should not be lightly vacated nor interfered with by trial or reviewing courts.[3]

■ It is appreciated that a proper charge to a jury may entail quite a number of instructions, the framing of which in language meaningful to laymen and consistent with legal precepts poses such a problem that losing counsel can usually find some flaws or inconsistencies to form a basis for a plausible argument that the jury were misdirected. Due allowance must be made for this fact and the instructions must be considered altogether and viewed with tolerance and understanding to see whether the basic issues were fairly and intelligibly presented for determination. If that purpose is accomplished, that is all that is necessary, and no verdict should be nullified for minor errors or inconsistencies in the instructions.[4] However, vital to the concept of trial by jury is that they be directed by the court as to the guiding principles of law controlling the rights of the litigants whose disputes they pass upon. The instructions in the instant case, having failed to clearly submit to the jury the fundamental issue of the defendant's negligence, fell short of that goal. It is necessary that a new trial be granted.

Reversed. Costs to appellant.

McDONOUGH, C. J., and WADE, WORTHEN and HENRIOD, JJ., concur.

2. 3 Utah 2d 444, 286 P.2d 240.

3. See Cottrell v. Grand Union Tea Co., 5 Utah 2d 187, 299 P.2d 622; 626; Stickle v. Union Pacific R. Co., Utah, 251 P.2d 867.

4. See Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287, 294.