346 P.2d 711

David McMURDIE, William Whittaker, Carol Whittaker, and Denise Whittaker, by her Guardian ad litem William Whittaker, Plaintiffs and Appellants,

v.

Alvin UNDERWOOD, Joseph Johnson, H. E. Woolf, and North American Van Lines, Defendants and Respondents.

No. 8894.

Supreme Court of Utah.

Oct. 27, 1959.

3.  Art. XIV, Sec. 3, Utah Constitution.

E. L. Schoenhals, Salt Lake City, for appellants.

Walter L. Budge, Hanson, Baldwin & Allen, Skeen, Worsley, Snow & Christensen, Salt Lake City, for respondents.

CALLISTER, Justice.

This is an action to recover damages for injuries sustained in an automobile accident. Appellants appeal from a verdict of "no cause of action" and contend that the lower court erred in its instructions to the jury.

Appellants are the driver and occupants of a passenger car. The respondents are the drivers and owners of two semi-trailer trucks.

The accident happened about 1:45 a. m. on the morning of December 15, 1956, on a straight stretch of U. S. Highway 40 and 50 near the Salt Lake and Tooele County boundary. The highway at that point runs in a northeasterly direction, it is approximately 33 feet wide, hard surfaced and has almost no shoulder. The weather was clear and the road was dry. Prior to the accident three large trailer-trucks were parked along this highway facing east toward Salt Lake City and spaced approximately 150 feet from each other. Unit No. 1 had developed lighting difficulties and had stopped at the side of the highway to make repairs. Unit No. 2, driven by respondent Alvin Underwood and owned by respondent Joseph Johnson, passed Unit No. 1, observed its difficulty, parked about 150 feet ahead and the driver returned to give assistance. Unit No. 2 was parked with all four wheels on the highway, allegedly with all of its lights off. While repairs were being made, Unit No. 3, also a large semi-trailer truck, drove by Units Nos. 1 and 2 and parked from 100 to 175 feet ahead of Unit No. 2 facing eastward with all wheels on the pavement and all of its lights on. Unit No. 3 was driven by respondent H. E. Woolf and was owned by respondent North American Van Lines.

While the trucks were thus parked appellant William Whittaker, driving a Nash automobile carrying the other appellants as passengers, passed Unit No. 1 and then observed Unit No. 2 blocking the road. Being unable to pass without going over the center line and after observing the lights of approaching vehicles and the blinker and rear lights of Unit No. 3, Whittaker stopped behind Unit No. 2 and waited for the oncoming traffic to clear. His automobile stopped so that the left side of his car was slightly to the left of the left side of Unit No. 2. While parked in this position Whittaker noticed in his rear view mirror the

approach of a speeding pickup truck. He pressed his brakes hard to light the bright red rear lights of his car and he also turned on his turn signal light. The pickup truck continued coming until it crashed into the rear of the Nash automobile, pushing it forward into and partially under the left rear end of Unit No. 2. The car was completely wrecked and the occupants were severely injured.

At the pretrial conference the court held the driver of the pickup negligent as a matter of law and the driver, person in charge and the owner of the pickup truck settled all claims against them prior to trial and therefore are not now parties to this action.

The question of the liability of the respondents was tried before a jury in April, 1958, and it returned a "no cause of action" verdict.

Appellants claim that the court erred in its instructions to the jury and specifically cite as error the instruction pertaining to the negligence of Nancy Dillingham, driver of the pickup truck.

The court's instruction was as follows:

"You are instructed that the driver of the pickup truck was negligent as a matter of law, and if you find that she observed the hazards, if any of the stopped vehicles upon the highway or under the circumstances should have observed said vehicles, but because of her negligence failed to do so in time to avoid said accident, then you are instructed that the negligence on her part was the sole proximate cause of the collision, and your verdict must be in favor of the defendants and against the plaintiffs, no cause of action."

The issue before this court is whether the above instruction had the effect of taking away from the jury any question of concurrent contributory negligence on the part of the respondents and thereby directed the verdict in their favor.

This court speaking to the problem of when an independent intervening negligent act becomes a sole proximate cause recently stated the following in the Hillyard case:[1]

"In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, the courts have drawn a clear-cut distinction between two classes of cases. The first situation is where one has negligently created a dangerous condition (such as parking the truck) and a later actor observed, *or circumstances are such that he could not fail to observe,* but negligently failed to avoid it. The second situation involves conduct of a

1. Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287, 292.

404

later intervening actor who negligently failed to observe the dangerous condition until it was too late to avoid it. In regard to the first situation it is held as a matter of law that the later intervening act does interrupt the natural sequence of events and cut off the legal effect of the negligence of the initial actor."

■ It does not seem unreasonable to conclude that one who approaches a dangerous condition, created by the negligence of another, and either sees it, or circumstances are such that one must see it in time to avoid that danger, and fails to do so, becomes the sole proximate cause of any damage or injury caused thereby.

The Hillyard case stated further:

"The distinction is basically one between a situation in which the second actor has sufficient time, after being charged with knowledge of the hazard, to avoid it, and one in which the second actor negligently becomes confronted with an emergency situation."

It appears to us that the instant case belongs to the situation where the second actor had sufficient time after being charged with knowledge of the hazard, to avoid it. The Hillyard case represented a situation of emergency where a driver approached a dangerous scene (a parked truck) which was obstructed from view and remained so until just before the impact. The driver did not, nor could he have observed the emergency situation before it was upon him.

The facts of the instant case are distinguishable from those of the Hillyard case. It does not appear from the evidence that the situation was of the type that one would normally not discover until it was too late. The Nash car was sitting in plain sight as (Nancy Dillingham) the driver of the pickup truck approached. It was the Nash car, stopped on the highway with which she collided. The appellants not only admit, but claim that the tail lights were lighted on their car and that the left rear signal light was flashing. The weather was clear and visibility was good. The evidence showed that Unit No. 1 was parked on the shoulder of the road so that Whittaker, sitting in the car, saw in the rear view mirror the approach of the pickup truck before it reached Unit No. 1. There could not then have been a trap created. The driver of the pickup saw, or can be charged with seeing the flashing signal and tail lights of the Nash automobile in sufficient time to have avoided a collision.

■ The trial court correctly applied the principle set forth in the Hillyard case by telling the jury in the complained of Instruction No. 27 that:

"* * * if you find that she (Nancy Dillingham) observed the hazards

\* \* \* of the stopped vehicles \* \* \* or under the circumstances should have observed said vehicles, but because of her negligence failed to do so in time to avoid said accident, \* \* \* then negligence on her part was the sole proximate cause of the collision."

Appellants did not claim nor prove that the driver of the pickup truck was confronted with an emergency situation so therefore the issue rightfully went to the jury under the above instruction to determine whether or not she observed the hazard or should have observed the hazard. Absent an emergency situation, Nancy Dillingham's failure to observe and negligently colliding with the appellant became the sole proximate cause of the collision. We are of the opinion that the complained of instruction was proper.

The appellant further complains of the trial court's refusal to give other requested instructions. After careful consideration of the trial court's instructions we are of the opinion that the basic issues were fairly and intelligibly presented to the jury for its determination.[2] The court also correctly refused to instruct the jury on the failure of the respondents to put out flares.

The verdict of the jury should not be disturbed. Costs to respondents.

CROCKETT, C. J., and HENRIOD and McDONOUGH, JJ., concur.

WADE, Justice (dissenting).

I dissent. The evidence would sustain a finding that Unit No. 2 was negligently parked (1) without lights and (2) too far out on the highway. We must determine whether the evidence would support a finding that such negligence was a contributing proximate cause of the accident and the correctness of the court's instructions.

By Instruction 27 the court said:

"You are instructed that the driver of the pickup truck was negligent as a matter of law, and if you find that she observed the hazards, if any, of the stopped vehicles upon the highway or under the circumstances should have observed said vehicles, but because of her negligence failed to do so in time to avoid said accident, then you are instructed that the negligence on her part was the sole proximate cause of the collision, and your verdict must be in favor of the defendants and against the plaintiffs, no cause of action."

This instruction in effect directs a verdict against plaintiffs. It declares the pickup truck driver negligent as a matter of law. Then it directs a finding that such driver's negligence was the sole proximate cause of the accident and a verdict against

2. Heywood v. Denver & R. G. W. R. Co., 6 Utah 2d 155, 307 P.2d 1045.

plaintiffs if the jury finds her negligent on either one of the only two grounds of negligence chargeable against her. I think this instruction was erroneous. It is generally held in such case that the original tort-feasor's negligence is a contributing proximate cause of injuries resulting jointly from the original passive negligence and the later intervening active negligence of a third person if the original tort-feasor could reasonably anticipate the intervening negligence. At least four times we have held that such a situation presents a jury question.

In Knight v. Wessler,[1] a Salt Lake-Ogden Transportation Company truck facing southward was left with three or four feet parked on its right side of an 18-foot wide paved portion of the highway after dark without lights. Plaintiff Knight was traveling north with lights and turned to his right so that his right wheels were off the pavement in passing the parked truck. Defendant Wessler was driving a truck south behind the parked truck with his lights burning. As Knight passed the parked truck, Wessler turned suddenly from behind the parked truck to avoid running into it and ran into the Knight car, damaging it. We affirmed an award of damages to Knight against both defendants Wessler and the Salt Lake-Ogden Transportation Company, holding that the evidence justified a finding that the negligent parking of the truck was a contributing proximate cause of the accident.

In Rollow v. Ogden City,[2] it was claimed that a city fireman negligently drove a fire truck into a floating street marker and the depression from which such marker was dislodged causing the fire truck to turn into plaintiff, a pedestrian, injuring him. We reversed a directed verdict for the city, holding that although the city was immune from suit for the negligence of the fireman, it was liable for damages suffered from its negligent failure to keep its streets reasonably safe, and that the issue on whether such failure was a contributing proximate cause of the injuries was a jury question.

In Caperon v. Tuttle,[3] we reversed because an instruction, the same as here, did not explain that defendant's negligence in leaving unattended sheep on the highway might make them liable for injuries to plaintiff from a collision with such sheep and the automobile in which he was a guest, even though the driver was also negligent.

In Hillyard v. Utah By-Products Co.,[4] plaintiff recovered a judgment for the death of her son who was killed when the car in which he was a guest crashed into

1. Knight v. Wessler, 1926, 67 Utah 354, 248 P. 132.
2. Rollow v. Ogden City, 1926, 66 Utah 475, 243 P. 791.
3. Caperon v. Tuttle, 1941, 100 Utah 476, 116 P.2d 402, 135 A.L.R. 1399.
4. Hillyard v. Utah By-Products Co., 1953, 1 Utah 2d 143, 263 P.2d 287.

the rear end of defendant's parked truck which protruded five feet onto the 24 foot wide paved portion of a much traveled street, leaving only 7 feet between it and the center lane. The car was traveling at about 50 miles per hour in a 25-mile-per-hour zone passing cars which were going in the same direction. As it started to pass another car, the driver saw approaching traffic coming so he swung back behind the car he wanted to pass when the car which he swung behind turned to its right around the protruding truck, and the driver of the car in which deceased was riding failed to make the turn, crashing into the truck. We affirmed the judgment, holding that the evidence supported the finding that the negligence of the defendant in parking its truck as it did was a contributing proximate cause of the death.

The first three cases above reviewed do not discuss the question of foreseeability but simply hold that the facts present a jury question. In some respects each of them are less favorable to plaintiff than this one. In the Knight case no reason is given why Wessler turned suddenly into the Knight car without first ascertaining that he could safely make such turn, or why he went so far over to the left side when with care he could probably have passed between the parked truck and the approaching car. In the Rollow case the defective street was known to the fire truck driver and in it and in the Caperon case the accident happened before dark.

The question of foreseeability is a very complicated problem; it is much easier to state the rule than to apply it to the facts of a complicated traffic problem. Each case must depend largely on its facts.

The Hillyard case, as here, presents a very complicated fact situation. There we discussed the facts and the question for foreseeability at length. We quoted with approval from an article entitled "Culpable Intervention as Superseding Cause" by Professor Eldredge as follows: [5]

"Suffice it to say that the decided modern trend of authority, both in England and America, has been to make the liability of the defendant turn upon whether the intervening human action was foreseeable and to hold the defendant liable where in the retrospect the intervening act did not appear to be particularly unusual or extraordinary."

We also quoted with approval from the Restatement of the Law of Torts the following: [6]

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's

5. 86 U. of Pa.Law Rev. 121.

6. Restatement of the Law of Torts, 1196, Section 447.

negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

In summing up the situation in the Hillyard case we said on page 151 of 1 Utah 2d and on page 292 of 263 P.2d:

"In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, the courts have drawn a clear-cut distinction between two classes of cases. The first situation is where one has negligently created a dangerous condition [such as parking the truck] and a later actor observed, *or circumstances are such that he could not fail to observe*, but negligently failed to avoid it. The second situation involves conduct of a later intervening actor who negligently failed to observe the dangerous condi-

tion until it is too late to avoid it. In regard to the first situation it is held as a matter of law that the later intervening act does interrupt the natural sequence of events and cut off the legal effect of the negligence of the initial actor. This is based upon the reasoning that it is not reasonably to be foreseen nor expected that one who *actually becomes cognizant* of a dangerous condition in ample time to avert injury will fail to do so. On the other hand, with respect to the second situation, where the second actor fails to see the danger in time to avoid it, it is held that a jury question exists, based on the rationale that it can reasonably be anticipated that circumstances may arise wherein others may not observe the dangerous condition until too late to escape it. The distinction is basically one between a situation in which the second actor has sufficient time, *after being charged with knowledge of the hazard*, to avoid it, and one in which the second actor negligently becomes confronted with an *emergency* situation." (Emphasis ours.)

The distinction between the two classes of cases mentioned above requires clarification. In both classes the first actor "negligently created a dangerous condition [such as parking the truck]" and the second actor negligently failed to observe or ob-

serving failed to avoid the accident. The difference is in the degree of negligence on the part of the second actor. In the first class the second actor "observed, or circumstances are such that he could not fail to observe, but negligently failed to avoid" the dangerous situation. In the second class the second actor "negligently failed to observe the dangerous condition until it was *too late* to avoid it." In both classes the second actor might negligently fail to see the dangerous situation until it was too late to avoid it. In such case the only difference is that in the first class the second actor "could not fail to observe" the situation whereas in the second class the second actor merely "negligently failed to observe" the dangerous situation until it was too late. This indicates only a difference in the degree of negligence. In the first class of cases the second actor if he actually saw the dangerous situation before it was too late to avoid it or if the circumstances were such that he could not fail to see the situation in time to avoid it, the chain of events are broken and the negligence of the first is not a contributing proximate cause of the accident. This because the first actor could not be expected to foresee the intervening extraordinary negligence but could foresee the intervention of *mere ordinary negligence*.

There is a line of Utah cases, where the actions of the second tort-feasor were clearly extraordinarily negligent in which we held that his actions were an intervening causation and the sole proximate cause of the injuries.[7]

This distinction is noted in (c) of the above quotation from the Restatement. In Medved v. Doolittle,[8] relied on in the Hillyard case, this distinction is recognized, and in holding that the negligence of the second actor was an intervening cause which relieved the first actor from liability it described the actions of the second actor as "extraordinary and culpable negligence" and "extreme, reckless, and wanton disregard."

To the same effect is Kline v. Moyer,[9] another case relied on in the Hillyard case where it is said:

"* * * Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an indepndent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does *not* become apprised of such danger un-

7. Haarstrich v. Oregon Short Line R. Co., 1927, 70 Utah 552, 262 P. 100; Lewis v. Savage, 1958, 7 Utah 2d 220, 322 P.2d 152.

8. Medved v. Doolittle, 1945, 220 Minn. 352, 19 N.W.2d 788, 792.

9. Kline v. Moyer, 1937, 325 Pa. 357, 191 A. 43, 46, 111 A.L.R. 406.

til his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties."

Under this quotation the distinguishing feature which determines the original tort-feasor's liability is whether the second actor was aware of the dangerous situation in time to avoid it. The wording "does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable," does not necessarily mean that if the driver of the second vehicle sees the parked truck in time but fails to avoid the accident the first tort-feasor is exonerated from liability. This language is susceptible to the construction that the second driver must not only see the parked truck but appreciate the danger in order to exonerate the original tort-feasor. This, I think, is the correct rule and requires extraordinary negligence on the part of the second tort-feasor to relieve the first from liability.

There is a line of cases discussed in a note following the Kline case in 111 A.L.R. 412–418 including the Utah case of Knight v. Wessler, supra, which follow this rule, and all of them where the collision is with a third vehicle, as here, hold that the original tort-feasor is not relieved from liability.

The Hillyard case is somewhat unique in pointing out the emergency confronting the second actor. The emergency is especially adapted to the facts of that case for the second car driver, even though driving with a bottle of beer in one hand at 50 miles per hour in a 25-mile-per-hour zone in the closing-time rush on a busy street, and even though constantly turning to his left to pass cars going his way, probably was so close behind another car that it obstructed his view of the parked truck until the car ahead turned out to go around it, and in the emergency the driver of that car failed to avoid colliding with the rear of the parked truck. Maybe only such an emergency under those circumstances could prevent the intervening negligence of the car driver from relieving the owner of the parked truck from liability. There is to some extent an emergency in all of these cases even though the view of the obstruction is not obstructed as in the Knight case, where the unlighted truck was parked at night but the driver of the second vehicle apparently failed to observe the dangerous situation until it was too late.

In applying the law to this fact situation, there is no serious claim that Whittaker was negligent in stopping his car where he did. His fault, if any, was too much

caution.[10]   The approach of traffic even though some distance away justified his stopping where he did, for he stopped only to await the clearing of traffic and it was necessary for him to be able to see the road ahead before he attempted to go around the parked truck.

Nancy, the pickup truck driver, testified that when she first saw the lights on Unit No. 1 she thought it was moving.  As she came closer she saw that it was stopped.  She turned into the left-hand traffic lane going around it when she saw traffic approaching in that lane so she turned back into the other lane and then she saw only the black Nash car blocking her way; she knew that it had lights but she did not notice them before she crashed into it.  Her testimony indicates that she completely failed to see the parked Unit No. 2 before the crash and also failed to appreciate the hazard created by that parked truck.  The evidence indicates that the Nash car might have been still moving when the pickup truck turned into the left-hand traffic lane going around Unit No. 1, but was stopped when the pickup truck returned into its right-hand lane to avoid approaching traffic.

I think that even though the Nash car was stopped before the pickup truck turned to go around the Unit No. 1, if the negligence of Unit No. 2 was a substantial factor in bringing about the accident, such negligence was a proximate cause of the injuries.  So I think this instruction was erroneous.  The negligence of the pickup truck driver was not an intervening cause which was unforeseeable and would therefore relieve the owner and driver of Unit No. 2 from liability.  The pickup truck driver's actions, although negligent, were a normal response to the situation created by the negligently parked Unit No. 2, and was not extraordinarily negligent.  The "circumstances were not such that she could not fail to observe the hazard," but she was "negligently confronted with an emergency."

She saw the lights on Unit No. 1, and turned into her left-hand traffic lane; she then saw the approaching traffic in that lane and when she returned to the right-hand lane, at the speed she was traveling it was too late to avoid ramming the Nash car.  This is similar to the situation in the Hillyard case.

I would grant a new trial to have these issues properly presented as against defendants Underwood and Johnson.  As to defendants Woolf and North American Van Lines, the verdict was clearly correct as a matter of law for there is no showing that parking of Unit No. 3 ahead of Unit No. 2 was a factor in causing the accident.

10.  See James, Nature of Negligence, 3 Utah Law Review 275.