357 P.2d 490

Alice McJUNKIN, formerly Alice Rodriguez, and Myrna Rodriguez, a minor, by her Guardian, Alice McJunkin, Plaintiffs and Appellants,

v.

Hazel CHASE, Defendant and Respondent.

No. 9150.

Supreme Court of Utah.

Dec. 8, 1960.

Ray S. McCarty, Sumner J. Hatch, Salt Lake City, for appellants.

Hanson, Baldwin & Allen, Salt Lake City, for respondent.

McDONOUGH, Justice.

Myrna Rodriguez, a girl 14 years of age, through her mother as guardian, sued for injuries suffered when the car driven by defendant struck a motorcycle upon which plaintiff was riding.

From an adverse jury verdict the plaintiff appeals, charging that the trial court committed error in: (a) refusing to rule that the defendant was guilty of negligence as a matter of law in not remaining stopped at the stop sign and yielding the right of way to the oncoming motorcycle, (b) in submitting to the jury the issue of the plaintiff's assumption of risk, and (c) in submitting the issue of her contributory negligence.

On July 5, 1958, at about 8:30 p. m., Vernon D. Green, a man 28 years of age, came to plaintiff's residence at 722 Second Avenue, Salt Lake City, on a motorcycle. Plaintiff asked him for a ride; she got on behind him and they went north to Third Avenue, then west thereon. Green started to speed the motorcycle up and she asked him to slow down, to which he replied, "Okeh, I won't scare you." Then they

stopped at a service station to buy some gasoline, after which they proceeded east again to "I" Street, which is an arterial street protected by stop signs; thence travelled northward up that street which is a fairly steep hill. Nothing more was said about the motorcycle speed. Meanwhile defendant, Hazel Chase, a woman 69 years of age, was driving west on Eleventh Avenue, with her brother and a nephew in her car, approaching its intersection with "I" Street. The testimony is that she made a full stop as she came to the intersection. She states she then "edged out" into the street to get a better look down "I" Street when the motorcycle came over the crest of the hill and the collision occurred. She said that the windows of her car were closed; that she had neither seen nor heard any vehicle coming up "I" Street prior to that instant. She described it as "coming out of the blue." The driver of a car right behind Mrs. Chase testified that she heard the roar of the motorcycle just as Mrs. Chase was proceeding into the intersection. The speed of the motorcycle was judged by several persons. Green estimated his own speed at 25 to 30 miles per hour, which was the same estimate as that of a man who saw the motorcycle go by his place about one and one-half blocks away from the collision; a man who saw the cycle travel 25 feet just prior to the impact judged the speed at between 40 and 50 miles per hour.

Mr. Green's testimony was that as he came up the hill toward Eleventh Avenue he noticed defendant's car coming along Eleventh Avenue from the east and thought that it was going to stop; he then looked for cars coming from the west and proceeded on to the intersection. The two vehicles collided at nearly the exact center of the intersection. The front grill of defendant's car struck the side of the motorcycle. Plaintiff was catapulted from her seat on the rear of the motorcycle through the air to the northwest corner of the intersection causing her to be grievously injured, including breaking her leg. Persons helping the plaintiff immediately afterward testified that she said to Green "I hate you. I told you not to go so fast." Mr. Green also suffered injuries. The occupants of defendant's car were not injured and it received only scratches across its front bumper and grill.

■ (a) In its instructions to the jury the trial court covered the questions of fact as to whether the defendant made proper observation and whether she failed to yield the right of way to a vehicle that had entered the intersection or was so closely approaching as to constitute an immediate hazard.[1] As we view the evidence these

1. Sec. 41–6–74, U.C.A.1953.

issues were proper subjects for jury determination.

▮ (b) On the question of assumption of risk: the court instructed the jury in substance that if the plaintiff voluntarily assumed the risk of the dangers involved, that she could not recover. The defendant attempts to justify the submission of this issue on the fact that the plaintiff had thought it necessary to warn Mr. Green about his driving, and yet got on the motorcycle again after stopping at the service station. It is true that she had been concerned about Green's driving too fast and had asked him not to, to which he had agreed. But we do not regard this circumstance as sufficient to justify the submission of the question of her assumption of risk that Green would be negligent to the jury.[2] This further is also to be observed: even if it had done so, it would not follow that there was a basis upon which the jury could determine that she assumed the risk of possible negligence of others, including that of the defendant. The instruction is susceptible of being so understood. Since upon any view to be taken of the matter, the plaintiff could not reasonably be found to have assumed the risk of negligence on the part of Green, and a fortiori, could not

be deemed to have assumed the risk of negligence of third persons, it was error to give an instruction of the assumption of risk and submit that issue to the jury.

▮ (c) We fail to see any justification for submitting the issue of contributory negligence to the jury. Plaintiff was neither driving the motorcycle, nor assisting therein, nor had any control over it. She was simply riding on the back seat as Mr. Green drove. They went over the crest of the hill and confronted this car so abruptly that there is nothing she could have done. Therefore there is no basis in the evidence upon which it reasonably could be found that plaintiff was guilty of any act or omission constituting negligence on her part which proximately contributed to the collision and it was error to submit that issue to the jury.

Upon the basis of the foregoing discussion it appears necessary that the case be remanded for a new trial. Costs to appellant.

CROCKETT, C. J., and WADE and CALLISTER, JJ., concur.

HENRIOD, J., does not participate.

2. For a discussion on the elements of Assumption of Risk see: Clay v. Dunford, 121 Utah 177, 239 P.2d 1075; Johnson v. Maynard, 9 Utah 2d 268, 342 P.2d 884.