365 P.2d 788

**KIMIKO TOMA, Administratrix of the Estate of Fred R. Shook, Jr., deceased, Plaintiff and Appellant,**

v.

**UTAH POWER & LIGHT COMPANY, a corporation, Defendant and Respondent.**

No. 9402.

Supreme Court of Utah.
Oct. 26, 1961.

Clyde C. Patterson and Robert V. Phillips, Ogden, for appellant.

Ray, Quinney & Nebeker, Marvin J. Bertoch, F. Gerald Irvine, Sidney G. Baucom, Salt Lake City, for respondent.

NELSON, District Judge.

In this action, the plaintiff, as administratrix of the Estate of Fred R. Shook, Jr., deceased, seeks judgment against the defendant for the death of the said decedent, alleging he was killed because of the negligence of the defendant.

█ The burden of proving negligence is on the plaintiff. The lower court held, by its judgment for directed verdict, that the plaintiff had failed to produce evidence sufficient to discharge this burden.

█ On appeal from a directed verdict we must review the evidence in the light most favorable to the losing party.[1] This, however, does not mean we must ignore undisputed facts which may be favorable to the prevailing party.

The record shows: Fred R. Shook, Jr. was killed on September 5, 1956, at about the hour of 5:30 p. m. He was 27 years of age, and that at that time he was working as a labor foreman for the Mountain States Construction Company. This company had previously contracted with the Bureau of Reclamation to construct a diversion dam across the Weber River at Slaterville, in a rural area west of Ogden, Utah. Work had commenced in July, 1956. The construction area was in close proximity to high tension wires owned and maintained by the defendant. From the last week in July, 1956, until the day of his death, Shook had labored around and about these wires.

The job required diverting the river so the dam could be built across the river bed. It involved excavating for the dam, putting in cut-off walls on the sides of the banks, making the forms and footings and pouring cement of which the dam was constructed.

The work proceeded during July and August. The north half of the dam was poured without incident. During August, Lawrence L. Trumbo, a sub-contractor, brought in a toll rig to place cement foundations for the cut-off walls on the north and south sides of the river bed.

The Utah Power & Light Company installed hot tops which could be used to deenergize the hot wires. When Mr. Trumbo commenced work he requested the Utah Power & Light Company to place a pole in the river bed to lift power lines, and at another time he requested the Utah Power

1. Hewitt v. General Tire & Rubber Co., 3 Utah 2d 354, 284 P.2d 471.

& Light Company to turn the power off. In each instance the Utah Power & Light Company complied with the request. The record further shows two telephone numbers of defendant's offices were posted on property of Mountain States Construction Company to be used for making requests to turn off power.

At 7:00 a. m. on September 6, 1956, the Mountain States Construction Company started to pour cement on the south side of the dam. The method of pouring was by a crane with a 55-foot boom placed at the southern corner of the damsite approximately 20 feet east of the dam. Ira Whitney, the crane operator's helper, estimated the crane was 50 feet west of the lines and Warren Thompson, crane operator, estimated crane was 30 feet west of power lines. Trucks loaded with ready-mix cement backed into an area northeast of crane and deposited the cement into a half-yard bucket placed on the ground at the rear of the trucks. The trucks were parked at an angle facing northeast so that part of the truck would probably be under the wire (this is disputed fact). After the truck unloaded the ready mix into the bucket, the crane picked up the filled cement bucket, then swung the bucket to the west and dropped the cement on the damsite. Then the boom swung back eastward toward the truck and toward the power line and deposited the bucket on the ground in its original position. Plaintiff's evidence (controverted by other evidence) is that the position of the bucket when picked up by the boom would be 10 to 12 feet west of the spot directly under the power lines. At all times the boom was in the vicinity of the wires and to go from one side of the wire to the other it was necessary to lower the boom. This occurred as often as several times a day.

Some time prior to 5:30 p. m. on September 6, 1956, Shook was directed to take a truck and request the operating engineer to put the bucket of the crane on the body of the truck. He backed into the spot (disputed) that a truck had used all day. The operator raised the bucket and placed it on the truck, and in so doing the cable of the boom either contacted or came so close to the hot wire as to cause the electricity to arc contacting the truck, killing Shook, who was standing at the side of the truck.

Loren Kay Waldren, project engineer for the Mountain States Construction Company, testified that three or four days prior to date of accident he requested by telephone the Utah Power & Light Company to de-energize the lines and the one answering the phone said the Utah Power & Light Company refused to do so. The Utah Power & Light Company denies any such phone call was made and their witness testified all requests made by the Mountain States Construction Company to turn off power had been granted. Both the plaintiff and the defendant were fully aware of the

construction area, the proximity of the wires to the damsite and the nature and types of equipment being used. Both knew that at all times after the 1st of August, 1956, there were three cranes in the construction area with booms 65, 45 and 40 feet long. Both knew the wires carried 12,500 volts with 7,200 volts to the ground and that they were at least 30 feet high; that at least 6 feet of pole was buried so that the wire including sag would be approximately 23 feet above the ground. One 45-foot pole was placed in the stream which was 14 to 15 feet lower than the bank. This provided a maximum clearance over the bed of 39 feet.

On this record the lower court granted a motion for a directed verdict for the defendant and took the case from the jury.

Plaintiff's appeal raises two major questions:

1. Was the trial court correct in refusing to submit the issue of defendant's alleged negligence to the jury?

2. Was the trial court correct in deciding that the sole proximate cause of the death of Fred R. Shook, Jr. was the negligence of certain employees of the Mountain States Construction Company?

If the answer is yes to either or both of the questions, then the trial court should be affirmed. Only if the answer is no to both questions should the lower court be reversed. After a careful review of the record we conclude the answer to question one is no and the answer to question two is yes.

Our reasons for so holding are hereinafter set out. This is an action based on alleged tort. A tort is a legal wrong committed by one against the person or property of another. It is the violation of a duty imposed by law. Three elements of every tort action are (1) existence of a legal duty from defendant to plaintiff; (2) breach of that duty; (3) damage as a proximate result.[2] It may arise by the violation of the duty in a given transaction, or by invasion of some public duty by which damages accrue to the individual.[3]

The defendant in this case was engaged as a public utility in furnishing electric power to a large number of customers. It was furnished various persons under different and peculiar circumstances. In all cases it is required to exercise the degree of care that a person of ordinary prudence would under the circumstances. It is well known that one dealing with electricity deals with a force of dangerous character and that there is a constant risk of injury to persons or property if not

2. Diver v. Miller, 4 W.W.Harr. 207, 34 Del. 207, 148 A, 291; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832.

3. Hayes v. Massachusetts Mut. Life Insurance Co., 125 Ill. 626, 18 N.E. 322, 1 L.R.A. 303; Polk v. City of Los Angeles, 26 Cal.2d 519, 159 P.2d 931.

properly controlled. The care observed must be commensurate with and proportionate to the danger. Therefore, the defendant company was obliged to meet a high standard of care, which was greater in some cases than another depending on the exigency of the service rendered. This duty the defendant owed to Fred R. Shook, Jr. at the time of and before his death when and while he was employed in the vicinity of defendant's wires.[4] Its duty to avoid accidents could have been discharged by doing one of the following: (1) insulating high tension wires in the construction zone or (2) raising these wires in the construction zone to a point of safety or (3) by using hot tops to cut off, turn off, or deaden its high tension wires during the time they knew that employees were required to work in the vicinity of the wires, or take other equally effective means for prevention of injury. Obviously it would not be required to comply with all these requirements because any one which would remove the danger would be sufficient. We have stated in Stone v. Union Pa. Railroad[5] the test of liability respecting consequences flowing from a particular act or failure to act. It was the duty of the defendant under existing conditions to exercise a high degree of care to maintain its wires in such condition and in such a way as to avoid accidents. A high degree of foresight is required because of the character and behavior of electricity which it sells. The defendant's knowledge of its service is supposedly superior to that of the users of the electricity.[6]

Having determined generally the duty of the defendant, we next inquire as to whether there has been a violation of this duty. It is contended by the plaintiff that where a power company has knowledge of the possibility of danger and a risk which could result by reason of the contact with high tension wires that there is an independent and continuing duty on the power company to see that such danger is eliminated by a positive continuing inspection of the wires in the danger zone.[7] There is authority to the effect such continuous inspection is not required, "that Power Co. must be notified of changed conditions before it can be made liable."[8]

It is contended by the plaintiff the defendant failed to make any inspections of the construction area to determine exact conditions which it knew or should have known were changing daily. The record shows, however, the defendant had prior to

4. Kentucky-Tennessee Light & Power Co. v. Priest, 277 Ky. 700, 127 S.W.2d 616.
5. Stone v. Union Pa. Railroad, 32 Utah 205, 89 P. 722.
6. Jones v. Douglas Air Craft Co., 251 N.C. 832, 112 S.E.2d 257.
7. Aguirre v. City of Los Angeles, 46 Cal. 2d 841, 299 P.2d 862.
8. Houston Lighting & Power Co. v. Brooks, Tex., 336 S.W.2d 603.

south fill complied with requests to reset a pole, raise wire and turn off power on different occasions.

■ It is our conclusion the Utah Power & Light Company would have the obligation to keep themselves informed generally of changing conditions and circumstances. Of greater importance, however, in this case is had the defendant been requested and if so did they refuse to cut off, turn off, or deaden the high tension wires during the time the employees of the Mountain States Construction Company were required to work in the vicinity of the wires in making the fill on the north side.

As stated in statement of facts Mr. Loren Kay Waldren testified he had made such request and had been informed the power would not be cut off. As before stated, defendant denied such request had been made.

In support of its action the District Court stated:

"I think that there is a failure as to your [plaintiff's] preponderance of the evidence that the Utah Power and Light Company had notice to turn off the power for the 6th day of September. I think when you come to the accident, that the Power Company is entitled to a request, and the Mountain States Construction Company has to do it. And they needed the request for

the specific time to have it turned off-and-on. I am going to rule my convictions * * *."

■ Whether the notice was given is a fact question. We have long held that the jurors are the sole judges of the facts proved, of the credibility of witnesses,[9] the weight and effect of the evidence, and the inferences to be drawn therefrom and in determining these matters they are to exercise their best judgment, based on their experience in life. They are not bound to believe all that any witness may have testified to nor are they bound to believe any witness. They may believe one witness as against many or many as against one. While it is the duty of the court to rule on the admissibility of evidence and the competency of witnesses, questions as to preponderance, or greater weight of the testimony and evidence is exclusively for the jury, except in particular cases where its effect is declared by law. These exceptions do not exist in this case. A judge is generally allowed to withdraw a case from the jury wherever there is insufficient competent, relevant and material evidence to support the issue, or where the evidence is contrary to all reasonable probabilities or is uncontroverted. Where, however, there is *any* competent and legally sufficient evidence to support the plaintiff's case, a motion for a directed verdict, irrespective of

9. Gittens v. Lundberg, 3 Utah 2d 392, 284 P.2d 1115.

the weight of such evidence should be denied.[10] The exceptions above mentioned do not exist in this case.

We cannot agree with the position that the notice to the Utah Power & Light Company had to be given on the day the particular work began. Could it be successfully argued that notice given the day before, September 5, 1956, would have been insufficient? Then if it could have been given on the 5th, why not on the 1st of September? It would seem the Utah Power & Light Company would have had less reason to complain with longer time to comply. Neither do we agree with the lower court that the exact time or the "specific time to have it turned off-and-on" had to be specified in the notice. The Utah Power & Light Company had express notice of the anticipated use of a crane in the vicinity, and the work to be done. Questions of "timely notice" and "sufficiency" of notice are, within certain limits and specifications, questions of fact which the jury, under proper instructions, are to determine. It was admitted by defendant that the power line could have been, and they would have, de-energized the line if given notice to do so. Surely it had the duty to turn off the power at time demand was made and for such time as would reasonably be required to complete the particular job requiring such safety, or else to effect a different understanding with the Utah Power & Light Company. It was the duty of the Utah Power & Light Company upon notice to determine length of time power should be turned off.[11] The question of notice was jury question.

■ It was argued the crane operator was negligent and his negligence concurring with the negligence of decedent constituted the sole proximate cause of the death of Fred R. Shook, Jr. The record will not support a finding of negligence on the part of the decedent, and even though crane operator were negligent, his negligence cannot be imputed to the decedent.

■ It was further maintained the Mountain States Construction Company through its management and its crane operator was negligent. If all this be true, it would not justify the Utah Power & Light Company to transfer or delegate its duty upon the Mountain States Construction Company. An injury due to neglect of duty on the part of the defendant cannot be avoided because a similar duty rested upon another who violated his duty. One, in such manner, cannot escape the consequences of his own act. Were it not for the rules pertaining to proximate and sole proximate cause, the District Court should be reversed.

10. 31 American Jurisprudence, pp. 15, 16.

11. Pike v. Consolidated Edison Co. of N. Y., 303 N.Y. 1, 99 N.E.2d 885.

Proximate cause has been defined as the cause next in relation to cause and effect. That which in natural sequence, unbroken by any efficient, intervening cause produces the injury, and without which the result would not have occurred.[12] That which is nearest in the order of causation. The last negligent act contributory to an injury without which such injury would not have resulted. The dominant cause, the moving or producing cause,[13] this cause may be an act or an omission. Proximate cause may be distinguished from immediate cause. The immediate cause is generally referred to in the law as the nearest cause in point of time and space, while the act or omission may be the proximate cause of an injury without being the immediate cause. The proximate cause may be more remote in time or space but closer to the result and is the responsible cause. When the causes are independent of each other, the nearest is, of course, to be charged with the accident and resultant injury.

In the Hillyard v. Utah By-products Co. case [14] we held:

"More than one separate act of negligence, even though they do not happen simultaneously, may be proximate causes of an injury. * * * When one does an act or omits to take a pre-caution and under the circumstances, as an ordinary prudent person, he ought reasonably to foresee that his act or omission will thereby expose interests of another to unreasonable risk of harm such person may be liable for resulting injuries caused by any reasonable foreseeable conduct whether it be innocent, negligent or even criminal. * * *

"One cannot excuse himself from liability arising from his negligent acts merely because the later negligence of another concurs to cause an injury, if the later act was a legally foreseeable event.

"Where one has negligently caused a dangerous situation and a later actor observes or circumstances are such that he cannot fail to observe, such condition, but later actor negligently failed to avoid it, as a matter of law, the later intervening act interrupts the natural sequence of events and cuts off the legal effect of the negligence of the initial actor but if conduct of later intervening actor is such that he negligently fails to observe a dangerous condition until it is too late to avoid it, question whether later intervening act

12.  Godfrey v. Vinson, 215 Ala. 166, 110 So. 13, 16; Lemos v. Madden, 28 Wyo. 1, 200 P. 791.

13.  Ballagh v. Interstate Business Men's Ass'n, 176 Iowa 110, 155 N.W. 241, 157 N.W. 726, L.R.A.1917A, 1050.

14.  Hillyard v. Utah By-Products Co., 1953, 1 Utah 2d 143, 263 P.2d 287.

supersedes negligence of initial actor is for jury."

■ Examining the facts of the case at bar in light of this case, we observe the Mountain States Construction Company knew the involved wires were live at the time of the pouring of cement on the south side September 5, 1956. Mr. Waldren testified he had been told power would not be cut off. Thus, even though the Utah Power & Light Company had negligently created a dangerous situation, and negligently continued to maintain such a condition by refusing to cut off the power, the Mountain States Construction Company did have knowledge of such condition and failed to avoid the impending disaster. On the contrary the Mountain States Construction Company put into motion the actions which created the accident. It is not that the Mountain States Construction Company failed to observe a dangerous condition until too late to avoid it. In fact the Mountain States Construction Company knew of the condition for four days. If the Utah Power & Light Company had informed the Mountain States Construction Company that power would be shut off and thereby the Mountain States Construction Company had reason to believe it had been cut off and relying upon the fact the Utah Power & Light Company on previous oc-

casions had complied with such requests, then and in such event it would be a question of fact for the jury to determine if their handling of bucket in dropping cement would supersede the negligence of initial actor, Utah Power & Light Company.

If Mountain States Construction Company had not known that the power was on, the legal consequences would have been entirely different. This fact alone, under the Hillyard case, would have been sufficient to have made it a jury question.

Strenuous efforts have been repeatedly made to have us reverse or at least modify the Hillyard case, particularly as it has to do with the determination of when proximate cause becomes a jury question. It has been vigorously argued that this case imposes a severe and unreasonable burden upon the plaintiff, and works a grave injustice upon an innocent injured person. The injured person is often stopped from holding responsible one joint tort feasor while prevailing against the other. Regardless of these many efforts we have consistently upheld our decision in the Hillyard case.[15]

The District Court in support of its ruling and addressing the plaintiff said:

"You have the up hill pull in this case. You have the challenge of it. I believe the Mountain States Construc-

15. McMurdie v. Underwood, 9 Utah 2d 400, 346 P.2d 711; McJunkin v. Chase, 11 Utah 2d 238, 357 P.2d 490; Nyman v. Cedar City, 12 Utah 2d 45, 361 P.2d 1114.

tion Company was negligent which was the sole cause."

While we attach no particular significance to the difficulty of plaintiff's pull, we do believe and so hold, from plaintiff's own evidence, that as a matter of law the negligence of the Mountain States Construction Company as hereinbefore set out was the sole proximate cause of the accident. So holding, the judgment of the District Court is affirmed. Costs to respondent.

CALLISTER, CROCKETT and McDONOUGH, JJ., concur.

WADE, Chief Justice (concurring and dissenting in part).

I concur on the first question determined in the prevailing opinion on the grounds therein stated, subject to the following comments:

The trial judge in directing a verdict against plaintiff indicated his doubt that a preponderance of the evidence showed that the Power Company had been requested to turn the power off for this operation. I agree with the prevailing opinion that whether there was a preponderance of the evidence on this issue is a jury question and does not justify a directed verdict. A directed verdict on this issue would be justified only where the losing party fails to show by substantial evidence that there is a reasonable basis for a finding in his favor. However, I doubt that the evidence on this issue is sufficiently substantial to furnish a reasonable basis for a finding in plaintiff's favor. I wonder if the trial judge did not use the term "preponderance of the evidence" inadvertently, intending to indicate a lack of sufficient substantial evidence from which the jury could reasonably find in plaintiff's favor. Had the trial judge so stated, as he probably intended, since he heard and observed the witnesses and was in a better position to determine their credibility than we are, and in view of the very doubtful nature of the evidence on this issue, I would not hesitate to agree that as a matter of law the Power Company was entitled to a finding in its favor on this issue.

A hasty glance at plaintiff's evidence suggests that a finding that the Power Company had refused when requested by the Construction Company to turn the power off would be unreasonable. The only evidence in plaintiff's favor on this issue is the uncorroborated testimony of the Construction Company's foreman, an interested witness. This testimony was positively denied by the Power Company's witnesses. It is also inconsistent with the undisputed evidence that the Power Company had gone to great lengths to cooperate with the Construction Company for the safety of the employees on this project. The Power Company had changed the line so that the power could be turned off and on when necessary, it had gone to the trouble of

placing a power line pole in the center of the river bed to avoid danger, and had shut the power off previously at the request of the Construction Company. No reason whatever is even suggested why the Power Company would become uncooperative in this instance and refuse to shut the power off in view of the danger which would thereby be created. I do not understand that the mere fact that an interested witness, who testifies to a fact which is highly favorable to his position, in view of the strong evidence to the contrary, furnishes a reasonable basis for a finding to that effect. So I am inclined to conclude that the evidence shows no reasonable basis for a finding in plaintiff's favor on this issue. Of course, if this is correct, then the trial judge's action in directing a verdict against plaintiff is supported by the evidence and would terminate the case in favor of the Power Company.

As to the second question determined in the prevailing opinion, I dissent, adhering to my dissenting opinion in McMurdie v. Underwood.[1] In that case I pointed out "that the original tort-feasor's negligence is a contributing proximate cause of injuries resulting jointly from the original passive negligence of a third person if the original tort-feasor could reasonably anticipate the intervening negligence" of another.[2] In the McMurdie case there was no disagreement on the above stated rule; the disagreement was on the instructions given which attempted to apply that rule to the facts there presented. I agree with the rule of the Hillyard v. Utah By-Products Company case,[3] that under the facts there shown, "it is not reasonably to be foreseen nor expected that one who actually becomes cognizant of a dangerous condition in ample time to avert injury will fail to do so." The Hillyard case also recognized as the determining factor the question of whether the original tort-feasor could reasonably foresee the danger he had created in determining whether his negligence was a contributing proximate cause of the accident. In that case, a car was driven into the rear of a large truck parked on the street, killing a passenger in the car. In a suit by the heirs of the passenger to recover damages for his death from the truck owner, the determining question was whether the car driver actually saw or could not fail to see the parked truck in time to avoid the accident. Answering that question in the negative, we held that there was a jury question on whether the negligence of the truck driver in parking the

1. See my dissenting opinion in McMurdie v. Underwood, 9 Utah 2d 400, 346 P.2d 711, 714.
2. See Knight v. Wessler, 67 Utah 354, 248 P. 132; Rollow v. Ogden City, 66 Utah 475, 243 P. 791; Caperon v. Tuttle, 100 Utah 476, 116 P.2d 402, 135 A.L.R. 1399.
3. Hillyard v. Utah By-Products Co., 1953, 1 Utah 2d 143, 263 P.2d 287, 292.

truck was a contributing proximate cause of the death, and we affirmed the verdict against the truck owner. Under the facts there presented I agree with that decision that a person who parks a large truck on the highway cannot reasonably foresee that a car will be driven into its rear if the driver of the car sees the parked truck in time to avoid the accident.

Here, the facts are very different from the facts in the Hillyard case. The rule that a person who does a static negligent act cannot reasonably foresee that such act will be a contributing cause of an accident where the person who does the intervening act knew of the static negligence is only applicable where the static negligence creates danger which is so obvious, and the likelihood that it will be avoided so clear, that the accident cannot be reasonably foreseen. This rule is only invoked under those circumstances and in applying it we must keep in mind that foreseeability is the standard test and that knowledge of the static negligence by the intervening tortfeasor can make his negligence the sole proximate cause only where with such knowledge it is clear that the original actor could not reasonably foresee that such an accident might occur.

In this case the fact that the Construction Company knew that there was a live wire in the neighborhood, especially if the Construction Company knew that the Power Company had refused to turn the electricity off when requested to do so, thereby indicating that the danger was not serious, in my opinion would not indicate to the Power Company that the Construction Company would discontinue its construction work and thereby eliminate the foreseeability of this accident.

To me it seems very clear that if the Power Company refused to turn the power off when requested, it could not help but clearly foresee that a great danger of an accident was thereby created. This is especially true in view of the knowledge which the Power Company must have that it is not unusual for hay derricks and other high machinery to be accidentally brought into contact with live power lines.

So I conclude that this case should be affirmed only if we conclude that plaintiff failed to produce substantial evidence from which the jury could reasonably find that the Power Company was requested to turn the power off. Otherwise, I think we should reverse this judgment.

HENRIOD, J., did not participate herein.