514 P.2d 1284

**Dudley M. AMOSS, Plaintiff and Respondent,**

**v.**

**J. R. BROADBENT, Defendant and Appellant.**

No. 13210.

Supreme Court of Utah.

Oct. 16, 1973.

Reed L. Martineau of Worsley, Snow & Christensen, Salt Lake City, for defendant and appellant.

Bryce E. Roe and Robert W. Adkins of Roe & Fowler, Salt Lake City, for plaintiff and respondent.

TUCKETT, Justice:

This is an action for the conversion of cattle. Defendant filed a counterclaim in which he claimed that the plaintiff had converted a quantity of baled hay.

A trial was had in the court below on the issues presented by the plaintiff's complaint and the defendant's counterclaim. At the conclusion of the trial the jury returned a verdict in favor of the plaintiff in the amount of $21,000 compensatory damages and $8,000 punitive damages. The jury also found the issues raised by the counterclaim against the defendant. The defendant is here seeking a reversal of the verdict and judgment of the court below and a new trial or in the alternative a remittitur of all sums in excess of $12,470.

In August of 1964, the plaintiff entered into an agreement for the purchase of a certain ranch owned by Heber Bennion, Jr., in Daggett County. After the execution of an earnest money receipt, plaintiff took possession of the ranch, the livestock thereon, and the equipment used in connection therewith. After the plaintiff took possession, a herd of cows and calves were taken to what is referred to in the record as the Schofield ranch, where they were released in a fenced pasture. After the purchase by Amoss, Bennion attempted to repossess the ranch, the livestock and other personal property included in the transaction. Bennion effected a sale of the cattle to the defendant, and the cattle were taken to the Broadbent ranch on October 21, 1964. The defendant paid the sum of $12,370 to Bennion for the cattle.

Dan Brown, plaintiff's ranch foreman, discovered that the cattle were missing, and after inquiries were made he located the cattle at the Broadbent ranch. Brown talked with defendant's foreman and was told to return the next day to take the cattle. When Brown called at the ranch the following morning, Broadbent ordered him from the ranch and refused to release the cattle. Brown testified that Broadbent threatened to shoot him if he returned to the ranch and also that Brown would be charged with trespassing unless he left immediately. The defendant had also called the county sheriff who was present when Brown returned to reclaim the cattle.

At the trail Brown testified that the herd consisted of 87 cows, 47 calves, and one heifer. The defendant testified that he had purchased 75 cows and 50 calves. Brown further testified that he had calculated the market value of the herd at somewhere between $20,000 and $21,000. Defendant testified as to the price he had paid for the herd, and he also introduced reports of the Department of Agriculture which would tend to show a total value of $11,576 for the 75 cows and 50 calves. Based upon the same market reports, the defendant testified that the value of 87 cows and 48 calves, the number claimed by the plaintiff to be in the herd, to be in the sum of $12,907.

The jury returned a verdict of $21,000 as compensatory damages to which the court added interest.

The defendant is here contending that there was no substantial evidence at the trial to support the jury's verdict of compensatory damages. Defendant bases his claim on the fact that plaintiff's only witness as to the value of the cattle was his foreman Dan Brown, who had little experience in the purchase and sale of cattle. In testifying as to his qualifications Brown stated that he was born on a farm and had been raised mostly on a farm and a ranch, and that in 1959 he had operated the Current ranch at Ely, Nevada. He also stated that he was one of the owners of a ranch at Rocks, Nevada, and that he had been employed by Boyd Sheary & Sons as a buyer and seller of cattle in eastern Nevada. He also testified that he had been engaged in the buying and selling of cattle for a period of 13 or 14 years. Based upon the qualifications stated above, Brown was permitted by the court to give his opinion as to the market value of the cattle in question. We see no breach of discretion on the part of the trial court in receiving Brown's testimony on value.[1] Brown also testified that the cattle in question had been selected from all of the cattle on the ranch as breeding stock and as a nucleus for expanding the livestock opera-

1. Harding v. Henderson, 123 Kan. 533, 255 P. 969.

tion. While the testimony of the defendant as to the value of the cattle was based on weights and market quotations and also the price he had paid Bennion for the herd, the jury had the right to believe the testimony of one witness as against another and to select the evidence which in the judgment of the jury was more convincing as to its accuracy.[2] It would appear that the verdict as to compensatory damages is supported by the evidence and we see no basis to interfere with the jury's finding.

■ As to the defendant's claim that the issue of punitive damages should not have been submitted to the jury it appears to be well taken. During the events leading up to the dispute before us there was never a confrontation between the plaintiff and the defendant. The evidence shows some highhanded conduct on the part of the defendant in dealing with the plaintiff's foreman, Dan Brown, and in the defendant's conduct in retaining the cattle and disposing of them. However, a fair appraisal of the record would show that defendant had purchased the cattle from Bennion and that Bennion had claimed ownership of the cattle and the right to sell the same, and also that Bennion offered to defend the defendant's title and ownership when the sale was completed. It would thus appear that

the defendant's refusal to surrender the cattle to the plaintiff was under a claim of right and would not support a finding that defendant acted in a reckless, wanton or malicious way in disregard of the rights of the plaintiff. A wrongful act is not in and of itself a sufficient basis to award punitive damages.[3]

Defendant further claims that other errors were committed during the course of the trial, some of which were not called to the attention of the trial court, and that court was not given the opportunity to consider or to correct those claimed errors. The claim of the defendant here is without merit as to those matters, and we do not deem it advisable or necessary to discuss them at length.

■ The defendant further claims that the verdict was given under the influence of passion and prejudice and should be reversed or a new trial granted. Juries are generally allowed a wide discretion in the assessment of damages. The compensatory damages assessed in this case were within the range of the evidence as to value. The fact that the jury chose to believe the evidence as to the value offered by the plaintiff rather than that offered by the

2. Toma v. Utah Power & Light Co., 12 Utah 2d 278, 365 P.2d 788; Weber Basin Water Cons. Dist. v. Skeen, 8 Utah 2d 79, 328 P.2d 730; Arnold Mach. Co. v. Intrusion Prepakt, Inc., 11 Utah 2d 246, 357 P.2d 496.

3. Palombi v. D & C Builders, 22 Utah 2d 297, 452 P.2d 325; Kroger Food Co. v. Singletary (Tex.Civ.App.), 438 S.W.2d 621; 25 C.J.S. Damages § 123(5).

defendant, and the size of the verdict are insufficient to show passion and prejudice.[4]

It is ordered that the judgment for punitive damages be vacated but the remaining portions of the judgment are affirmed. Respondent is entitled to costs.

CALLISTER, C. J., and HENRIOD, J., concur.

ELLETT, Justice: (concurring and dissenting).

I concur in reversing the judgment insofar as punitive damages are concerned. However, I cannot concur in affirming the judgment as to compensatory damages.

On or about October 21, 1964, Mr. Broadbent bought from a Mr. Bennion and received a bill of sale from him for cattle as follows:

| | | | |
|---|---|---|---|
| 73 cows at $125.00 | ⎫ | | |
| 2 cows at 62.50 | ⎬ | $ 9,250.00 | |
| 50 calves (mixed) | | 3,250.00 | |
| | Total | $12,500.00 | |

This was an arm's length transaction between two ranchers, each of whom knew the value of cattle.

Mr. Bennion had sold his ranch and livestock to Mr. Amoss, but because of defaults on the part of Amoss, Bennion had undertaken to repossess the ranch. Bennion sold the cattle to Mr. Broadbent in good faith, believing that he had the right to do so. It subsequently turned out that such was not the case.

This action was commenced on October 28, 1964, just one week after the transaction and before the dispute between Bennion and Amoss had been adjudicated. The complaint prayed for the return of 83 cows and 51 calves, and in case return would not be possible, then for damages in the sum of $14,040, the value thereof.

In May 1972, Mr. Amoss moved to file an amended complaint wherein he alleged that the value of the personal property converted was $18,000, although the prayer of his amended complaint as to the amount claimed for the cattle was the same as in his original complaint, viz., $14,040. The trial court denied the motion, and no appeal was taken from that ruling. Thereafter, to wit, on August 29, 1972, the case was tried. The defendant gave evidence of the value of the cattle to the effect that the price paid was the fair market value for them at the time and place of purchase from Bennion.[1] The foreman for plaintiff testified that he sat on his horse in a borrow pit and counted the cattle as they crossed the road at defendant's ranch and that there were 83 cows and 51 calves. He said he could not see the brands on some

4. Duffy v. Union Pac. R. Co., 118 Utah 82, 218 P.2d 1080; Wilson v. Oldroyd, 1 Utah 2d 362, 267 P.2d 759.

1. Amoss had been allowed a credit for $12,470 for these cattle in a judgment in favor of Bennion in a prior proceeding between the two.

of the cattle but he knew them all. When asked if he had an opinion as to the value of the cattle, he replied: "My opinion, if I recall actually at that time, I penciled the cattle and they were somewhere 20 and 21 thousand dollars worth of cattle."

He did not say that he thought that to be the value of the cattle. He only said that if he recalled, he had penciled them between the figures given. He never said that he did recall, and even if he had recalled what he penciled them at, it would be no proof of their then market value, for a man may pencil any figure he cares to write. The witness said he had assumed the cattle weighed 800 pounds each, although he did not weigh them.

Based upon this testimony, the plaintiff moved to amend the prayer of his complaint to ask for $21,000 as the value of the cattle. The amendment was permitted, although the witness said he "penciled" *between* $20,000 and $21,000. That statement would of necessity require a figure less than $21,000 if it were *between* $20,000 and $21,000. Defendant objected to the amendment.

While amendments ordinarily may be allowed in the discretion of the trial court, it is my opinion that the court in this case abused his discretion and erred in allowing the amendment.

I would remand the case with directions to grant a new trial unless plaintiff would consent to a remittitur of the amount by which the judgment rendered exceeds what it should have been based upon the prayer of the complaint, to wit, $14,040, as being the value of the cattle. I would award costs to the appellant.

CROCKETT, J., concurs in the views expressed in the concurring and dissenting opinion of ELLETT, J.